STATE of Wisconsin, Plaintiff-Respondent,

v.

George R. BOLLIG, Defendant-Appellant-Petitioner.

Supreme Court

*No. 98–2196–CR. Oral argument November 11, 1999.—Decided February 4, 2000.*

2000 WI 6

(Also reported in 605 N.W.2d 199.)

For the defendant-appellant-petitioner there were briefs by *Thomas E. Knothe* and *Collins, Quillin & Knothe, Ltd.*, LaCrosse, and oral argument by *Thomas E. Knothe*.

For the plaintiff-respondent the cause was argued by *William C. Wolford*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, George Bollig, seeks review of a published decision of the court of appeals affirming the circuit court's denial of his motion to withdraw his plea.[1] Bollig contends that his no contest plea to attempted sexual assault was unknowingly made because the circuit court failed to inform him of the registration requirement for sex offenders and failed to advise him of one of the essential elements of the offense.

¶ 2. He further asserts that the circuit court erroneously exercised its discretion in concluding that the plea withdrawal would substantially prejudice the State and that the court of appeals erred in assigning to the defendant the burden of proving lack of substantial prejudice. Because we conclude that Bollig's plea was knowingly and intelligently made, that the circuit

---

[1] *State v. Bollig*, 224 Wis. 2d 621, 593 N.W.2d 67 (Ct. App. 1999) (affirming judgment and order of circuit court for Juneau County, John W. Brady, Judge).

court did not place on Bollig the burden of proving lack of substantial prejudice, and that the circuit court properly exercised its discretion, we affirm the court of appeals.

¶ 3. For the purposes of this appeal, the facts are undisputed. George Bollig was initially charged in a criminal complaint with one count of having sexual contact with a person under the age of thirteen in violation of Wis. Stat. § 948.02(1) (1995–96).[2] On the morning of the scheduled trial date, the State offered to amend the charge to attempted sexual contact with a child under the age of thirteen in violation of Wis. Stat. §§ 939.32(1) and 948.02(1). Bollig accepted the State's offer and signed a plea questionnaire and waiver of rights form.

¶ 4. The court then engaged in a colloquy with Bollig, informing him of the implications of his no contest plea. It outlined two elements of the offense: that Bollig attempted to have sexual contact with the victim and that the victim was under the age of thirteen. However, the court failed to inform Bollig of the third element: that his actions must have been committed for the purpose of sexual gratification.

¶ 5. The plea questionnaire listed all three elements of the offense. The court inquired whether Bollig had read and understood the questionnaire after having reviewed it with his attorney. In addition, the court asked Bollig's attorney whether he was satisfied that Bollig was entering his plea knowingly and voluntarily. All of these questions elicited affirmative responses. Bollig then entered a no contest plea, and the court scheduled a sentencing hearing.

---

[2] Unless otherwise indicated, all future references to the Wisconsin Statutes are to the 1995–96 volumes.

¶ 6. At the time the plea was entered, Bollig was not informed that he would be required to register as a convicted sex offender under Wis. Stat. § 301.45. This statute requires sex offenders to register with the Department of Corrections and provide their name, address, physical description, place of employment or school, and the offenses for which they were convicted. Failure to register subjects the offender to both fine and imprisonment. Wis. Stat. § 301.45(6).

¶ 7. Prior to sentencing, Bollig filed a motion to withdraw his no contest plea on the basis that it was not entered knowingly, voluntarily, or intelligently. Bollig stated that he felt coerced on the day he made his plea, that he did not commit the crime with which he was charged, and that he had entered the plea agreement in order to spare the victim the trauma of testifying. The circuit court denied Bollig's motion to withdraw his plea and allowed his attorney to withdraw as counsel.

¶ 8. Upon the assignment of new counsel, Bollig filed another motion to withdraw his plea. The court deferred action on the motion as a result of his request to dismiss his new attorney. While awaiting the appointment of new counsel, Bollig filed a pro se motion, but the court took no action on that motion.

¶ 9. Bollig's fourth motion to withdraw his plea, this time through a new attorney, stated that at the time he entered his plea, he was not advised that he would be required to register as a convicted sex offender under Wis. Stat. § 301.45(1)(a), subjecting him to criminal charges if he did not comply with the requirement. Bollig argued that the registration requirement constituted punishment and that prior to accepting his plea, the court was required to advise him

of this direct consequence of the plea. The court disagreed and denied Bollig's motion.

¶ 10. Bollig was then sentenced to ten years imprisonment on the charge. He subsequently appealed the denial of his fourth motion to withdraw his plea. The court of appeals affirmed the circuit court's decision to deny Bollig's motion. Although the court of appeals recognized that the circuit court had not properly informed Bollig of one of the essential elements of his offense, it concluded that the State had proven by clear and convincing evidence that Bollig was nevertheless aware of the nature of his offense.

¶ 11. In addition, the court of appeals concluded that because registration under Wis. Stat. § 301.45 did not constitute punishment, the circuit court was not required to advise Bollig of the requirement. Finally, the court determined that even if Bollig's lack of knowledge regarding the registration requirement presented a "fair and just" reason for plea withdrawal, he failed to demonstrate an absence of substantial prejudice to the State. Thus, the court of appeals concluded that the circuit court properly denied the motion for plea withdrawal.

¶ 12. Bollig presently raises four issues on review. First, he contends that the circuit court's failure to inform him of the registration requirement rendered his plea unknowing and unintelligent. Next, he submits that the State bears the burden of proving substantial prejudice once a defendant has presented a fair and just reason for plea withdrawal. Bollig further submits that the court erroneously exercised its discretion in concluding that the plea withdrawal would substantially prejudice the State. Finally, Bollig contests the determination that he was aware of the nature of his offense notwithstanding the circuit

court's failure to discuss one of the essential elements of the offense during the plea colloquy.

¶ 13. On appellate review, the issue of whether a plea was knowingly and intelligently entered presents a question of constitutional fact. *State v. Van Camp*, 213 Wis. 2d 131, 140, 569 N.W.2d 577 (1997). We will not upset the circuit court's findings of historical or evidentiary facts unless they are clearly erroneous. *Id.* We review constitutional issues independently of the determinations rendered by the circuit court and the court of appeals. *State v. Harvey*, 139 Wis. 2d 353, 382, 407 N.W.2d 235 (1987).

¶ 14. We must also determine whether the circuit court properly denied Bollig's motion to withdraw his plea. A circuit court's discretion to allow a plea withdrawal prior to sentencing will be sustained unless the court erroneously exercised its discretion. *State v. Garcia*, 192 Wis. 2d 845, 861, 532 N.W.2d 111 (1995). The remaining burden of proof issue presents a question of law that we review independently of the opinions of the circuit court and court of appeals. *Ranes v. American Family Mut. Ins. Co.*, 219 Wis. 2d 49, 54, 60, 580 N.W.2d 197 (1998).

I.

¶ 15. First we address whether the circuit court's failure to inform Bollig of his requirement to register as a sex offender under Wis. Stat. § 301.45(1)(a) rendered his plea unknowing and unintelligent. It is well established that a guilty or no contest plea must be knowingly, voluntarily, and intelligently entered. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *State v.*

*Bangert*, 131 Wis. 2d 246, 257, 389 N.W.2d 12 (1986). Bollig's plea must be withdrawn as a matter of right if the circuit court was required to inform him of the registration requirement and failed to do so. *Van Camp*, 213 Wis. 2d at 139.

¶ 16. Courts are constitutionally required to notify defendants of the "direct consequences" of their pleas. *Brady v. United States*, 397 U.S. 742, 755 (1970); *State v. James*, 176 Wis. 2d 230, 238, 500 N.W.2d 345 (Ct. App. 1993). A direct consequence represents one that has a definite, immediate, and largely automatic effect on the range of defendant's punishment. *State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 636, .579 N.W.2d 698 (1998). In contrast, defendants do not have a due process right to be informed of the collateral consequences of their pleas. *Id.*; *State v. Santos*, 136 Wis. 2d 528, 531, 401 N.W.2d 856 (Ct. App. 1987). Wisconsin Stat. § 971.08 represents the statutory codification of the constitutional mandate that a plea be knowing, voluntary, and intelligent and requires that a defendant be aware before entering a plea of the potential punishment upon conviction. In essence, we must determine whether the registration requirement constitutes punishment.

¶ 17. Whether sex offender registration is punishment, and hence a direct consequence of a plea, represents an issue of first impression in this state. However, a number of other states have tackled this issue, some in the context of pleas and others in the context of ex post facto and double jeopardy analyses.

¶ 18. Of the states that have addressed whether registration of sex offenders is punishment, all but one

have answered in the negative.[3] Despite variations in the classification of sex offenders, extent of public noti-

[3] *See Robinson v. State*, 730 So. 2d 252, 254 (Ala. Crim. App. 1998)(registration and notification requirements collateral consequences and not punishment); *Patterson v. State*, 985 P.2d 1007, 1019 (Alaska Ct. App. 1999) (registration requirement a collateral consequence); *State v. Young*, 542 P.2d 20, 22 (Ariz. 1975) (registration collateral effect of conviction); *Collie v. State*, 710 So. 2d 1000, 1008 (Fla. Dist. Ct. App. 1998) (designation as sexual predator a collateral consequence); *Ray v. State*, 982 P.2d 931, 935 (Idaho 1999) (registration not a direct consequence); *People v. Taylor*, 561 N.E.2d 393, 394 (Ill. App. Ct. 1990) (registration act not penal in nature); *Spencer v. O'Connor*, 707 N.E.2d 1039, 1046 (Ind. Ct. App. 1999) (notification not punishment); *State v. Pickens*, 558 N.W.2d 396, 400 (Iowa 1997) (sex offender registration not punitive); *State v. Myers*, 923 P.2d 1024, 1031 (Kan. 1996) (sex offender registration act not punitive but regulatory); *State v. Manning*, 532 N.W.2d 244, 248 (Minn. Ct. App. 1995) (registration not punishment); *State v. Costello*, 643 A.2d 531, 534 (N.H. 1994) (no added punishment imposed by sex offender registration); *Doe v. Poritz*, 662 A.2d 367, 404–05 (N.J. 1995) (registration requirement not punitive but regulatory); *State v. Burr*, 598 N.W.2d 147, 159 (N.D. 1999) (registration not punishment); *State v. Cook*, 700 N.E.2d 570, 581 (Ohio 1998) (no punitive intent underlying registration statute); *State v. Matthews*, 978 P.2d 423, 426 (Or. Ct. App. 1999) (no retributive intent behind registration requirement); *Commonwealth v. Gaffney*, 702 A.2d 565, 569 (Pa. Super. Ct. 1997) (registration provisions not intended to punish); *Guzman v. State*, 993 S.W.2d 232, 236 (Tex. App. 1999) (registration a collateral consequence); *Kitze v. Commonwealth*, 475 S.E.2d 830, 832 (Va. Ct. App. 1996) (registration requirement not punishment); *State v. Ward*, 869 P.2d 1062, 1074 (Wash. 1994) (registration requirement not punitive but regulatory); *Johnson v. State*, 922 P.2d 1384, 1387 (Wyo. 1996) (registration not punishment). *But see People v. McClellan*, 862 P.2d 739, 745 (Cal. 1993) (sex offender registration a direct consequence of plea).

fication, exemption opportunities, period of mandatory registration, and the crimes to which registration is applicable, statutes in most states are remarkably similar. That is because most state statutes have the same genesis and are versions of Megan's Law.[4]

¶ 19. Named after a young child raped and murdered by a convicted sex offender residing nearby, Megan's Law was passed by the New Jersey legislature in 1994 with the intention of providing community and parent notification of convicted sex offenders residing within the community. *E.B. v. Verniero*, 119 F.3d 1077, 1081 (3d Cir. 1997). Presently all 50 states have some type of sex offender registration and notification laws in effect. *See Roe v. Farwell*, 999 F. Supp. 174, 177 n.1 (D. Mass. 1998).

¶ 20. Courts that have determined that sex offender registration is not punitive have held that the underlying intent is public protection and safety. *See e.g., Doe v. Poritz*, 662 A.2d 367, 372–73 (N.J. 1995); *Commonwealth v. Gaffney*, 702 A.2d 565, 568 (Pa. Super. Ct. 1997). *See also* Licia A. Esposito, *State Statutes or Ordinances Requiring Persons Previously Convicted of Crime to Register with Authorities*, 36 A.L.R. 5th 161, 173–74, 193–95 (1996). Registration

---

[4] In 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, which encourages states to enact sex offender registration and community notification laws in order to receive federal funding for crime prevention. *See* 42 U.S.C. § 14071(g)(2)(A). The passage of the act came in the wake of the cases involving eleven-year-old Jacob Wetterling and seven-year-old Megan Kanka. In 1996, President Clinton signed a federal version of Megan's Law, which added a mandatory notification provision to the existing registration requirements. *See* 42 U.S.C. § 14071(d).

statutes assist law enforcement agencies in investigating and apprehending offenders in order to protect the health, safety, and welfare of the local community and members of the state. *State v. Burr*, 598 N.W.2d 147, 153 (N.D. 1999); *State v. Ward*, 869 P.2d 1062, 1073 (Wash. 1994). Courts have concluded that the remedial goal of protecting the public outweighs any punitive effect of registration, including any infringement on the rights of the offender. *See e.g., Ray v. State*, 982 P.2d 931, 935–36 (Idaho 1999); *People v. Taylor*, 561 N.E.2d 393, 394 (Ill. App. Ct. 1990).

¶ 21. Likewise, Wisconsin's registration statute does not evince the intent to punish sex offenders, but rather reflects the intent to protect the public and assist law enforcement. Wisconsin Stat. § 175.45 (1993–94) originally governed sex offender registration. The statute was substantially revised and renumbered to § 301.45 by 1995 Wisconsin Act 440. The revised § 301.45 requires a sex offender to register with the Department of Corrections (DOC) rather than the Department of Justice (DOJ), as previously required.

¶ 22. The drafting file for 1995 Wisconsin Act 440 contains a proposal prepared by the Wisconsin DOC Sex Offender Community Notification workgroup. This workgroup was formed in response to efforts by legislators to introduce community notification legislation based on a revision and expansion of the then existing registration statute. The Executive Summary of Recommendations indicates that the intent underlying the legislation related to community protection. Wisconsin DOC, *Sex Offender Community Notification* i (1994). In addition, a stated goal included the balancing of community protection with the offender's community reintegration needs. *Id.* at 1.

¶ 23. Bollig argues that, irrespective of an intent to protect the public, registration and the subsequent public dissemination of information under § 301.46 constitute punishment, akin to traditional shaming punishments used throughout history to degrade those who have overstepped the boundaries imposed by law. *See* Lawrence M. Friedman, *Crime and Punishment in American History* 36–38 (1993); Adam J. Hirsch, *From Pillory to Penitentiary: The Rise of Criminal Incarceration in Early Massachusetts*, 80 Mich. L. Rev. 1179, 1225–26 (1982). Bollig maintains that since registration and release of information result in ostracism, humiliation, and retaliation, they constitute punishment.

¶ 24. Wisconsin Stat. § 301.46, which grants access to the registration information provided under § 301.45, does not automatically grant the public carte blanche access to the information. Although access is more liberal for law enforcement agencies, release of information to members of the general public requires compliance with enumerated conditions and is limited to when "providing the information is necessary to protect the public."[5] This section does not allow for the indiscriminate publication of a sex offender's vital

---

[5] Under Wis. Stat. § 301.46(5), an individual may request sex offender information when the department or the police chief or sheriff determine that release of such information is necessary to protect the public and the individual:

Submits a written request for the information in the form and manner prescribed by the department or local law enforcement. The department or local law enforcement may require that a person specifically state his or her purpose for requesting the information;

Specifies by name the person about whom he or she is requesting the information; and

information. Rather, the selective release of information underscores that public protection, and not punishment, represents the core concern.

¶ 25. The principles outlined in the DOC proposal indicate the desire to discourage acts of "vigilante-ism." *Sex Offender Community Notification* at 2. The summary of recommendations also suggests "limited" access to the sex offender registry, discouraging the use of "mass media releases, distribution of door-to-door fliers, or any other method of notification that may be described as 'intrusive'." *Id.* at ii.

¶ 26. Although we recognize that sex offenders have suffered adverse consequences, including vandalism, loss of employment, and community harassment, the punitive or deterrent effects resulting from registration and the subsequent dissemination of information do not obviate the remedial and protective intent underlying those requirements. *State v. McMaster*, 206 Wis. 2d 30, 46–47, 556 N.W.2d 673 (1996); *State v. Dugan*, 193 Wis. 2d 610, 620–21, 534 N.W.2d 897 (Ct. App. 1995). *See generally* Richard Zevitz & Mary Ann Farkas, *Sex Offender Community Notification: Assessing the Impact in Wisconsin* (1999) (study conducted by National Institute of Justice, on file at Marquette University Department of Social and Cultural Sciences). Simply because registration can work a punitive effect, we are not convinced that such an effect overrides the primary and remedial goal underlying Wis. Stat. § 301.45 to protect the public.

¶ 27. We determine that Wisconsin's sex offender registration requirements do not constitute punish-

Provides any other information that law enforcement deems necessary to determine accurately whether the person specified is registered under s. 301.45.

ment. Because the duty to register is not punishment, it does not represent a direct consequence of Bollig's no contest plea. Rather, it is a collateral consequence, and Bollig does not have a due process right to be informed of collateral consequences prior to entering his plea.

## II.

¶ 28. Having determined that sex offender registration is not punishment, we next address whether the circuit court properly exercised its discretion in concluding that the plea withdrawal would substantially prejudice the State. The question of whether a defendant may withdraw his plea is left to the sound discretion of the circuit court. *Van Camp*, 213 Wis. 2d at 139. However, a circuit court should freely allow a defendant to withdraw his plea prior to sentencing for any fair and just reason, unless the prosecution will be substantially prejudiced. *Garcia*, 192 Wis. 2d at 861; *Cannedy*, 161 Wis. 2d at 582.

¶ 29. Although "freely" does not mean "automatically," *Garcia*, 192 Wis. 2d at 861, the exercise of discretion requires the court to take a liberal, rather than a rigid, view of the reasons given for plea withdrawal. *Libke v. State*, 60 Wis. 2d 121, 127–28, 208 N.W.2d 331 (1973); *State v. Shanks*, 152 Wis. 2d 284, 288, 448 N.W.2d 264 (Ct. App. 1989). A fair and just reason contemplates "the mere showing of some adequate reason for defendant's change of heart." *Libke*, 60 Wis. 2d at 128. However, the reason must be something other than the desire to have a trial. *Cannedy*, 161 Wis. 2d at 583.

¶ 30. In this case, the circuit court concluded that Bollig's ignorance as to the registration requirement did not present a fair and just reason for plea with-

drawal. The court noted, however, that even if this ignorance did amount to a fair and just reason, prejudice to the State outweighed the reason for plea withdrawal.

¶ 31. The State concedes that if Bollig was unaware of his requirement to register as a convicted sex offender, he presented a fair and just reason for plea withdrawal. When viewed liberally, as required under the *Libke* standard, we conclude that Bollig's lack of knowledge as to the consequences of his plea constituted a fair and just reason. *Shanks*, 152 Wis. 2d at 290 (genuine misunderstanding of plea's consequences fair and just reason for plea withdrawal).

¶ 32. However, determining that Bollig offered a fair and just reason does not conclude our inquiry as to whether a plea withdrawal should have been granted. We must still examine whether the circuit court erroneously exercised its discretion in concluding that the State would suffer substantial prejudice if Bollig were allowed to withdraw his plea.

¶ 33. At the outset, we address the question of who should bear the burden of proof on the issue of substantial prejudice. Bollig posits, and the State agrees, that the State should bear the burden of demonstrating substantial prejudice once a defendant has offered a fair and just reason for plea withdrawal.

¶ 34. On no previous occasion has this court explicitly addressed the issue and assigned the burden of proof to the State in a similar situation. We seize the opportunity to do so now and conclude that once the defendant presents a fair and just reason, the burden shifts to the State to show substantial prejudice so as to defeat the plea withdrawal.

578

¶ 35. In reaching this conclusion, we look to the analyses of the federal courts that have addressed this issue. We do so because our standard for plea withdrawal conforms to the standard articulated by the ABA Standards for Pleas of Guilty, Standard 14–2.1, and by Federal Rule of Criminal Procedure 32(e).[6]

¶ 36. Cases in the federal context establish that the State bears the burden to demonstrate that it will suffer substantial prejudice once the defendant has offered a fair and just reason for plea withdrawal. *See e.g., United States v. Ramos,* 810 F.2d 308, 313 (1st Cir. 1987); *United States v. Hancock,* 607 F.2d 337, 338 (10th Cir. 1979); *United States v. Nahodil,* 776 F. Supp. 991, 996 (M.D.Pa. 1991).

---

[6] In *State v. Reppin,* 35 Wis. 2d 377, 385–86, 151 N.W.2d 9 (1967), this court adopted the legal standard for plea withdrawal set forth in the tentative draft of the American Bar Association Project on Minimum Standards for Criminal Justice. The draft provided that a court has discretion to grant a pre-sentence plea withdrawal for any fair and just reason unless the state would be substantially prejudiced by reliance upon the plea.

This court applied the 1968 approved draft version to a pre-sentence plea withdrawal in *Libke v. State,* 60 Wis. 2d 121, 125–26, 208 N.W.2d 331 (1973), and also acknowledged that Fed.R.Crim.P 32(d) was the "ancestor" of the ABA standards. The *Libke* court then analyzed federal cases interpreting Rule 32(d) and the "fair and just" language. *Id.* at 126–28.

Rule 32(d) was amended in 1983 to incorporate the "fair and just" language and has been subsequently revised and changed to 32(e). Except for minor stylistic changes, subdivision (e) remains the same as subdivision (d).

Likewise, the ABA standard has also been revised and essentially expresses the same sentiment as Rule 32(e). *See* American Bar Association, Standards for Criminal Justice, Pleas of Guilty, Standard 14–2.1(a) (2d ed. 1986 Supp.).

¶ 37. The Commentary to Standard 14–2.1(a) of the ABA Standards for Pleas of Guilty also recognizes the shifting of the burden. The Commentary states: "[a]ssuming that the defendant establishes a fair and just reason, the burden then shifts to the prosecution to show substantial prejudice if the defendant's plea were to be withdrawn." Commentary to Standard 14–2.1(a) at 14–54.

¶ 38. We note that the court of appeals in this case erroneously cast the burden on Bollig to show that the State would not suffer substantial prejudice as a result of his plea withdrawal. *State v. Bollig*, 224 Wis. 2d 621, 639, 593 N.W.2d 67 (Ct. App. 1999). Affirming the decision to deny plea withdrawal, the court of appeals discussed the circuit court's finding that Bollig failed to prove a lack of prejudice to the State. *Id.* However, the record does not indicate that the circuit court improperly assigned the burden or rendered its decision based on Bollig's failure to demonstrate lack of substantial prejudice to the State.

¶ 39. The circuit court made no reference to Bollig's failure to satisfy this added burden of proof during the plea hearing. Rather the court denied plea withdrawal by finding, based on the facts on record, that the State would suffer substantial prejudice. Thus, the error was in the court of appeals' assignment of the burden of proof and not in the circuit court's interpretation of that burden. We reiterate that once the defendant has presented a fair and just reason for plea withdrawal, the burden shifts to the State to demonstrate substantial prejudice so as to defeat the plea withdrawal.

¶ 40. Bollig contends that once the burden shifted to the State to show substantial prejudice, the State failed to satisfy its burden. According to Bollig,

the State offered no demonstrative evidence that it would suffer prejudice as a result of Bollig's plea withdrawal, and thus the circuit court erred in finding prejudice based on its personal assumptions and inferences.

¶ 41. In order to sustain a circuit court's discretionary decision to deny a plea withdrawal, we must ensure that the court's determination was made upon the facts of the record and in reliance on the appropriate and applicable law. *State ex rel. Schwarz*, 219 Wis. 2d at 635; *Bangert*, 131 Wis. 2d at 289. We will find an erroneous exercise of discretion if the court improperly relied upon irrelevant or immaterial factors. *Elias v. State*, 93 Wis. 2d 278, 282, 286 N.W.2d 559 (1980).

¶ 42. The record in this case reveals that the State raised the issue of prejudice during a scheduled plea hearing at which Bollig changed his mind and indicated that he instead wanted a trial. The State noted on the record that Bollig was "just playing games with the system" and that his numerous dilatory tactics would adversely affect the child victim's ability to recall her testimony and the events underlying the offense.

¶ 43. In determining that there would be substantial prejudice to the State, the circuit court noted that further delay by granting Bollig's plea withdrawal and allowing the case to go to trial would hamper the victim's ability to recall pertinent events. The court was familiar with the facts of this case and was aware of the record.

¶ 44. The record reveals that the attempted sexual assault occurred in February 1996, when the victim was four and a half years old. Initially scheduled to begin in February 1997, Bollig's trial was taken off the

trial calendar due to his intent to plead to the charge. However, the subsequently scheduled plea hearing was also removed from the trial calendar because he indicated that he desired a trial instead. Bollig yet again changed his mind and finally entered a plea of no contest to the charge of attempted sexual assault in May 1997.

¶ 45. Sentencing was delayed several months due to Bollig's repeated dissatisfaction with his appointed attorneys. On his fourth motion to withdraw his plea, the circuit court observed the numerous delays and noted that nearly two years had passed since the offense, which would adversely affect the child victim's memory.

¶ 46. In light of the facts of the record, as well as the recognition of the effects of protracted criminal proceedings on the victim's memory, we determine that the circuit court properly concluded the State would suffer substantial prejudice as a result of Bollig's plea withdrawal. It was reasonable to consider the impact a plea withdrawal would have on the child victim, the State's key witness. Since the circuit court did not improperly rely upon personal assumptions or other irrelevant factors, it did not erroneously exercise its discretion in denying Bollig's motion to withdraw his plea.

### III.

¶ 47. Finally, we address whether Bollig was aware of the elements of his offense so as to render his plea knowing and intelligent. Due process requires that a plea be knowing, voluntary, and intelligent. *Van Camp*, 213 Wis. 2d at 140. A plea violates due process

unless the defendant has a full understanding of the nature of the charges against him. *Id. See also Brady v. United States*, 397 U.S. 742, 748 (1970).

¶ 48. This court in *State v. Bangert*, 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986), set forth a test to ascertain whether a defendant did not have an understanding of the charges against him, thus rendering his plea constitutionally infirm. First, a defendant must show that the trial court failed to comply with the procedural requirements included in Wis. Stat. § 971.08.[7] *Id.* Then, the defendant must properly allege that he did not understand or know the information that should have been provided at the plea hearing. *Id.*

¶ 49. Once the defendant has made a prima facie showing that his plea was accepted without compliance with the procedures set forth in Wis. Stat. § 971.08 and has also properly alleged that he did not understand or know the information that should have been provided at the plea hearing, the burden shifts to the state to show by clear and convincing evidence that the plea was knowingly, voluntarily, and intelligently entered. *Id. See also State v. Moederndorfer*, 141 Wis. 2d 823, 830, 416 N.W.2d 627 (Ct. App. 1987).

---

[7] Wisconsin Stat. § 971.08(1) incorporates the constitutional imperative that a plea be knowing, voluntary, and intelligent, stating in relevant part:

Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

██

¶ 50. The essential elements of a charge of attempted sexual contact with a child under the age of thirteen include that the defendant attempted: 1) to have sexual contact with the victim; 2) the victim had not attained the age of thirteen at the time of the alleged contact; and 3) the alleged contact was for the purpose of defendant's sexual gratification or the victim's humiliation. *See* Wis JI-Criminal 2103.[8]

¶ 51. The State concedes that the circuit court did not inform Bollig of one of the essential elements of his offense. Although the court notified Bollig of the first two elements, it failed to inform him that the offense must have been committed for the purpose of his sexual gratification. Thus, Bollig has made a prima facie showing that his plea did not conform to the procedural standards set forth in *Bangert*. He has also properly alleged that he did not understand or know the information that should have been provided at the plea hearing.

¶ 52. Since Bollig has satisfied the first part of the *Bangert* test, the burden now shifts to the State to demonstrate by clear and convincing evidence that Bollig was aware of all three elements of his offense, despite the inadequacy of the plea colloquy. *Bangert*, 131 Wis. 2d at 274. Bollig contends that the court of appeals erred in determining that he was aware of the nature of his offense by relying on the signed plea questionnaire, as well as his presence at a pre-trial hearing

---

[8] Wisconsin JI-Criminal 2103 has subsequently been moved to 2102, which incorporates the definition of sexual contact found in 2101A. Although the revised 2102 indicates only two elements of the charge, it incorporates by reference the definition of sexual contact, which includes the added sexual gratification element.

concerning evidence of prior sexual assaults. We disagree with Bollig's contention.

¶ 53. The State may utilize the entire record to demonstrate Bollig's knowledge of the nature of his offense and of the constitutional rights he was waiving. *Id.* at 274–75. The record in this case reflects that the circuit court inquired whether Bollig understood the implications of his no contest plea, including the constitutional rights he was waiving as a result. The court also asked whether he had enough time to discuss the plea and the elements of the offense with his attorney. Bollig responded affirmatively to each question.

¶ 54. Paragraph Seven of the plea questionnaire contains a specific reference to the essential elements of the offense, including the element of sexual gratification. Those elements are followed by Bollig's signature at the end of the form. When asked by the court whether he had reviewed and signed the plea questionnaire and waiver of rights form, and whether he understood the contents of the form, Bollig responded in the affirmative and expressed his acknowledgement of the elements contained in the plea questionnaire. The information contained in the questionnaire may be used to demonstrate Bollig's awareness of the nature of his offense. *State v. Brandt*, 226 Wis. 2d 610, 621, 594 N.W.2d 759 (1999).

¶ 55. Bollig's presence at a pre-trial hearing concerning the admissibility of evidence of prior sexual assaults further demonstrates his awareness. At that hearing, the State asserted that prior acts evidence was relevant to establish motive and intent, because Bollig had a history of assaulting young girls for the purpose of his sexual gratification. Viewed together, the plea questionnaire and Bollig's presence at the pretrial hearing satisfied the State's burden to show by

clear and convincing evidence that Bollig was aware of the nature of his offense, despite the inadequacy of the plea colloquy.

¶ 56. In summary, we determine that the circuit court's failure to inform Bollig of his requirement to register as a sex offender did not render his plea unknowing and unintelligent. Since registration is not a direct consequence of Bollig's plea, he did not have a due process right to be informed of the requirement prior to entering his plea.

¶ 57. We further determine that the State bears the burden of proving substantial prejudice in order to defeat a plea withdrawal and that the circuit court did not improperly assign that burden to the defendant. Additionally, the court did not erroneously exercise its discretion in finding that the plea withdrawal would substantially prejudice the State. Finally, we conclude that despite the circuit court's failure to advise Bollig of one of the essential elements, the State has demonstrated by clear and convincing evidence that he was nevertheless aware of the nature of his offense. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.