COURT OF APPEALS
DECISION
DATED AND FILED

February 9, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2020AP349-CR**
**2020AP350-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2017CF2669
2017CF2957

**IN COURT OF APPEALS**
**DISTRICT I**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

MICHAEL JAMES BIRK,

   DEFENDANT-APPELLANT.

---

APPEALS from judgments and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed.*

Before Dugan, Graham and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Michael Birk contends that the circuit court erred when it denied his pre-sentencing and postconviction motions to withdraw his guilty pleas. According to Birk, his trial counsel provided inaccurate information and coerced him to plead guilty with empty promises. Birk argues that he is entitled to withdraw his pleas because the plea colloquy was defective, the pleas he entered were not knowing, voluntary, or intelligent, and his trial counsel provided ineffective assistance of counsel.

¶2 Based primarily on the circuit court's findings of fact, which are not clearly erroneous, we conclude that Birk has not demonstrated that he should have been able to withdraw his pleas. Accordingly, we affirm.

## BACKGROUND

¶3 The State charged Birk with six felonies, all arising out of a home-invasion and sexual assault. After his arrest, Birk allegedly solicited a fellow inmate to murder the victim of these crimes, and the State filed a second complaint charging Birk with conspiracy to commit first-degree intentional homicide. The cases were consolidated for trial, which commenced on January 29, 2018.

¶4 After the proceedings had adjourned on the first day of trial, Birk and his trial counsel met for several hours to review evidence that the State intended to present. This evidence included a recording of Birk's conversation with the inmate he solicited to murder the victim and a recording of Birk's confession to police regarding the conspiracy charge.

¶5 On the morning of the second day of trial, Birk's trial counsel announced that Birk had decided to accept a plea agreement. Pursuant to the agreement, Birk would plead guilty to one count of first-degree sexual assault

2

while using a dangerous weapon and one count of conspiracy to commit first-degree intentional homicide. All other charges would be dismissed and read into the record for consideration at sentencing. The State agreed to recommend no more than thirty-five years of initial confinement in prison, and Birk would be free to ask the court for a sentence he thought appropriate.

¶6 The circuit court conducted a colloquy to determine whether Birk was knowingly, voluntarily, and intelligently entering his pleas. In so doing, the court referred to the plea questionnaire forms and addendums for each case, which Birk reviewed with his trial counsel and signed prior to the plea hearing.

¶7 During the colloquy, the circuit court confirmed with Birk that, among other things, his ability to understand the charges and the proceeding was not impaired, he had discussed "everything" with trial counsel and was satisfied with his representation, and nobody made any promises or threats to get him to plead guilty. The court also confirmed Birk's understanding of the effect of the plea agreement and maximum penalties he faced. Regarding the constitutional rights that Birk was waiving, the circuit court asked, "[s]o you're going to be waiving those constitutional rights that are contained in the guilty plea questionnaire and waiver of rights form that you've signed?" Birk responded in the affirmative. Later in the colloquy, the court mentioned some, but not all, of the specific rights that Birk was waiving by pleading guilty. Pertinent here, the court did not specifically mention that Birk had the right to either testify in his defense or remain silent, and that if he chose to remain silent, his silence could not be used against him.

¶8 The circuit court also questioned trial counsel, who assured the court that Birk was competent to proceed with the guilty pleas, and that Birk was

3

knowingly, voluntarily, and intelligently waiving his constitutional trial rights. The court accepted Birk's guilty pleas after finding that the complaint's allegations provided a factual basis for the charges.

¶9　According to Birk, he immediately regretted his decision to plead guilty and attempted to contact trial counsel to pursue a plea withdrawal. However, Birk was unable to speak with counsel until the day before sentencing.

¶10　At the outset of the sentencing hearing, trial counsel described the situation and made an oral motion for plea withdrawal. Counsel acknowledged that he could not find any defect in the colloquy and had not identified any basis for Birk to withdraw his pleas under *Bangert*.[1] However, he argued that Birk was entitled to a *Nelson*/*Bentley*[2] hearing to demonstrate that there was an extrinsic factor outside of the colloquy that rendered the pleas invalid. According to counsel, Birk's decision to plead had been "done relatively hastily" in the middle of the trial after counsel had been unable to locate an important defense witness. Counsel had advised Birk that "the likelihood of him getting out of prison" if he lost after a trial "was probably slim to none," and that "the better pathway of getting out of prison was that he should take the deal and basically throw himself at the mercy" of the circuit court. Counsel stated that he might have "overmaster[ed] [Birk] to get him to accept an offer." He did not "think so," but it

---

[1] *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986) (providing that, when a defendant shows a defect in the plea colloquy, the court should hold an evidentiary hearing where the State has the burden to prove that the defendant entered a knowing, intelligent, and voluntary plea).

[2] *Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972); *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996) (collectively providing that a defendant is entitled to an evidentiary hearing if the defendant alleges facts that, if true, would demonstrate that there was some factor extrinsic to the plea colloquy that would render a plea unknowing, involuntary, or unintelligent).

was "something that somebody else should take a look at." Counsel asked the court to adjourn the sentencing hearing and appoint new counsel to file a *Nelson/Bentley* motion. The court denied this request, determining that there was no error in the plea colloquy, and that it had not heard a "fair and just reason" to allow Birk to withdraw his pleas.

¶11     The circuit court then turned to sentencing. Consistent with the plea agreement, the prosecutor recommended a combined thirty-five years of initial confinement in prison for both offenses. Birk argued for twenty to twenty-five years initial confinement and twenty-five years extended supervision. As the court had advised Birk, a sentencing court is not bound by the parties' sentencing recommendations,[3] and here, the court imposed consecutive sentences totaling sixty-three years of initial confinement followed by twenty-two years of extended supervision.

¶12     Birk filed a postconviction motion to withdraw his pleas. In an affidavit accompanying the motion, Birk averred that his mental state had been compromised at the time of trial because his mental health problems had been aggravated by the conditions of his confinement in the Milwaukee County Jail. He averred that trial counsel told him that he would be compelled to testify in his defense if he proceeded to trial. Birk also averred that counsel told him that he would serve no more than twenty to thirty-five years in prison if he took the plea deal, but that he would spend the rest of his life in prison if he went to trial. According to Birk, he did not have the capacity to understand what was happening during the plea colloquy and felt coerced to accept the plea deal. Birk also averred

---

[3] *See* **State v. Williams**, 2000 WI 78, ¶2, 236 Wis. 2d 293, 613 N.W.2d 132.

that he has always maintained his innocence, and he would have continued with the trial if he had known that he would not be required to testify and had not been pressured by counsel to enter guilty pleas.

¶13 Birk and his trial counsel both testified at an evidentiary hearing, which was held almost two years after Birk entered his plea. For his part, trial counsel testified that he and Birk had "heated discussions" the evening before Birk entered his guilty pleas because their options were limited. Initially, Birk had planned to defend against the sexual assault charge by testifying that he had not been present at the victim's home and was not the person who committed the assault. However, after Birk learned that the State intended to present DNA evidence identifying him as the perpetrator, Birk changed course and wanted to defend against the charge on the basis that the victim invited him into her home and consented to a sexual encounter. This presented a challenge because "the only way to refute directly … what the victim was going to say had to come from [Birk]." Counsel testified that it would be very difficult to prevail based on a defense that the victim had consented to sexual contact without Birk's testimony.

¶14 During the evidentiary hearing, trial counsel acknowledged that he lacked independent recollection of his specific discussions with Birk about the plea agreement offered by the State. Regarding the right to testify or remain silent, counsel testified that he "would have gone over it" with Birk because that is what he does with all of his clients—not just at the time they decide to enter a plea agreement, but "all the way through [the] representation." He also may have advised Birk that it would "be very hard to win unless you get up on the stand, otherwise our defense of consent is very weak." Counsel testified that it was "[Birk's] decision," and that he would have gone ahead with the trial without Birk's testimony if that is what Birk desired. When pushed about his lack of a

6

specific recollection of the discussion, counsel testified that he was "sure" that he had discussed the right to remain silent with Birk because he discusses that right "with all [his] clients."

¶15   Regarding his assessment of likely outcomes, counsel testified that he "may have" said that Birk would "probably get 20 to 30 years if he plead guilty," and that he "may have" predicted that "he would spend the rest of his life in prison" if he went to trial—but again, he did not have any specific recollection of this discussion.   Counsel testified that he did not "push" Birk to enter a plea, that he was "ready to go to trial," and that he was "frankly" surprised the following morning when Birk said he wanted to accept the plea deal.

¶16   Birk also testified at the hearing.   He explained that when he met with his trial counsel after the first day of trial, counsel told him "we weren't able to get any witnesses, no medical experts, no alibis, no witnesses in the case[.]" According to Birk, he originally wanted to testify in his defense, but he changed his mind after deciding that he would not be a good witness.   He decided to plead guilty because counsel told him that his "only defense was to testify or take the pleas."   At one point, he testified that he knew about the right to remain silent at trial, even though his attorney was advising him that he "would have a slim chance to succeed at trial" if he exercised that right.   At other points, Birk testified that he did not know he had the right to remain silent until after he pleaded guilty, and that if he had known that his silence could not be used against him, he would have proceeded to trial.   Despite the averment in his affidavit, Birk did not testify

7

during the hearing that trial counsel promised him that he would receive no more than twenty to thirty years in prison if he pleaded guilty.[4]

¶17     The circuit court denied the postconviction motion. In so doing, it made the following findings of fact: Birk was advised of the maximum penalty for each offense; his claim that he was coerced into entering a plea and his claim that he did not understand he could remain silent at trial were "incredible" and "contradicted by the record"; trial counsel "did not promise [Birk] anything" to cause him to plead guilty, nor did counsel "threaten" him in order to "force" him to enter pleas; counsel "properly advised" Birk of counsel's "assessment of the potential outcome of a trial"; throughout the representation, counsel and Birk "discussed in detail" Birk's "right to testify," his "right to remain silent, and the strategic advantages and disadvantages of exercising each right"; Birk "was fully informed of his constitutional rights"; and Birk's "decision to enter guilty pleas was based on [his] weighing of the advantages and disadvantages of proceeding to trial."

¶18     Based on these credibility determinations and findings of fact, the circuit court concluded that there had been no "fair and just" reason for Birk to

_____

[4] Throughout his opening appellate brief, Birk asserts that trial counsel "promised him that upon entry of his guilty pleas he would receive no more than 20-30 years of initial confinement on both cases." In its response brief, the State argues that there is no evidence to support this assertion because neither Birk nor his trial counsel testified at the evidentiary hearing that such a promise was made. In his reply brief, Birk does not address the State's arguments, and instead, continues to cite to a statement from his affidavit as if it were evidence. *But see State v. Lowe*, 2005 WI 116, ¶42, 284 Wis. 2d 111, 700 N.W.2d 62 (providing that the "general rule is that credibility determinations are resolved by live testimony"). If Birk means to argue that he need not testify about facts that are included in his affidavit, he cites no authority to support this proposition, which we reject as unsupported and undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

withdraw his plea before sentencing and there was no "manifest injustice" requiring plea withdrawal after sentencing.

## DISCUSSION

¶19     Before sentencing, a circuit court should freely allow a defendant to withdraw a plea if there is a "fair and just" reason and it will not substantially prejudice the State.  *State v. Bollig*, 2000 WI 6, ¶28, 232 Wis. 2d 561, 605 N.W.2d 199.  This question is left to the sound discretion of the circuit court, *id.*, and we will only reverse on appeal if the court erroneously exercised its discretion, *id.*, ¶14.  We will affirm the court's exercise of discretion if it "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach."  *State v. Cooper*, 2019 WI 73, ¶13, 387 Wis. 2d 439, 929 N.W.2d 192 (citation omitted).

¶20     After sentencing, a defendant is entitled to withdraw a plea only if necessary to correct a "manifest injustice."  *See State v. Taylor*, 2013 WI 34, ¶48, 347 Wis. 2d 30, 829 N.W.2d 482.  The defendant has the burden to prove a manifest injustice by clear and convincing evidence.  *Id.*, ¶¶24, 48.  This burden may be met if, for example, the defendant did not enter a knowing, intelligent, and voluntary plea or if the defendant received ineffective assistance of counsel.  *State v. Dillard*, 2014 WI 123, ¶¶37-38, 84, 358 Wis. 2d 543, 859 N.W.2d 44.

¶21     Birk asserts that he was in a vulnerable mental state when he pleaded guilty, his trial counsel had provided inaccurate information that was not adequately corrected during the plea colloquy, and counsel pushed him to enter his pleas through coercion and empty promises.  He contends that these same basic facts constitute a "fair and just" reason for plea withdrawal prior to sentencing as well as a "manifest injustice" after sentencing.  Birk argues that we should reverse

the circuit court because the plea colloquy was defective, the resulting pleas were not knowing, voluntary, or intelligent, and he received ineffective assistance of counsel. Before explaining why we reject these arguments, we pause to address an assertion that permeates all three of Birk's arguments: that the circuit court was required to accept his version of the facts as true because "no one contradicted Mr. Birk's sworn testimony" at the postconviction evidentiary hearing.

## I. The Circuit Court's Findings of Fact Are Not Clearly Erroneous

¶22 When the circuit court makes findings of historical or evidentiary fact, we will sustain them on appeal unless they are clearly erroneous. *Taylor*, 347 Wis. 2d 30, ¶25. Birk points to trial counsel's admission that he did not independently recall his specific discussions with Birk about the plea agreement. We understand Birk to be arguing that his testimony was uncontradicted and the circuit court was required to credit it. We disagree for the following reasons.

¶23 First, many aspects of Birk's testimony were consistent with trial counsel's testimony. Specifically, both testified that they were in a tough spot because they did not have any potential defense witnesses besides Birk. Both testified that counsel advised, in Birk's words, his "chances were slim to none" of prevailing at trial without his testimony to support a consent defense. Both testified that counsel predicted Birk would be sentenced to spend the remainder of his life in prison if he was convicted after a jury trial. The circuit court's findings are consistent with these undisputed facts.

¶24 Second, even where the testimony diverged, we do not agree that Birk's testimony was uncontradicted. The main point of dispute was whether trial counsel specifically advised Birk that he had a constitutional right to remain silent at trial and that his silence could not be used against him. Although counsel could

10

not specifically recall his conversations with Birk, counsel testified that he was "sure" that he talked to Birk about that right because he discusses it with all of his clients throughout the representation. This testimony is consistent with Birk's representation during the plea colloquy that he understood all of the constitutional rights he would be giving up by entering a plea. If credited, counsel's testimony directly contradicts Birk's assertions that his trial counsel did not advise him of his right to remain silent during trial.

¶25 Third, as the fact finder, it was the circuit court's role to resolve conflicts in testimony, and we uphold the court's findings and credibility determinations unless they are inherently or patently incredible. *Dickman v. Vollmer*, 2007 WI App 141, ¶14, 303 Wis. 2d 241, 736 N.W.2d 202; *cf. Holbrook v. Holbrook*, 103 Wis. 2d 327, 335, 309 N.W.2d 343 (Ct. App. 1981) (stating that a circuit court is not required to adopt even uncontradicted testimony if it is inherently improbable). Here, the circuit court reasonably credited trial counsel's testimony that he advises all his clients about their right to remain silent. Regarding counsel's statements that it would be difficult to prove consent without Birk's testimony, the court reasonably considered this as sound strategic advice under the circumstances, rather than an attempt to undermine that right. It was also reasonable for the court to find Birk's testimony that he did not understand what was going on to be "self-serving" and "incredible." Accordingly, we conclude the circuit court's findings of fact are not clearly erroneous.

## II. Birk Is Not Entitled to Any Further Relief Based on an Alleged *Bangert* Violation

¶26 Birk argues that the plea colloquy was defective because the circuit court did not specifically advise him of each constitutional right he was waiving,

11

particularly the right to remain silent at trial. He cites two cases and argues that they stand for the proposition that this omission renders the colloquy defective: ***State v. Hoppe***, 2009 WI 41, 317 Wis. 2d 161, 765 N.W.2d 794, and an unpublished per curiam from this court.

¶27     We begin by observing that Birk cites no precedential or persuasive authority for the proposition that there was a defect in the plea colloquy. *See* WIS. STAT. § 971.08 (2017-18) (identifying the circuit court's mandatory duties when taking a plea).[5] We do not consider the unpublished decision that Birk cited because it has no precedential or persuasive value and may not be cited as precedent or authority in any court of this state. WIS. STAT. RULE 809.23(3).[6] We are also not persuaded that ***Hoppe*** supports Birk's assertion that circuit courts must specifically advise defendants of each constitutional right they are waiving. *See **Hoppe***, 317 Wis. 2d 161, ¶¶22, 29-31, 34, 40-42, 46 (holding that a circuit court may refer to a written plea questionnaire during a plea colloquy but may not rely entirely on it as a substitute for an in-person colloquy, and "assum[ing] without deciding" that Hoppe's plea colloquy was defective because the circuit

---

[5] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[6] Appellate counsel cited the unpublished opinion in Birk's opening brief, and again in his reply brief even after being notified by the State's response brief that the citation violated our rules of appellate procedure. We admonish counsel that future violation of the rules concerning citation of unpublished opinions may result in sanctions.

court did not inform him "of the constitutional rights being waived by entry of his guilty pleas").[7]

¶28    Regardless, we need not conclusively decide whether the colloquy was defective because Birk does not explain why the alleged defect would be grounds for reversal. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (appellate courts need not address issues raised by the parties that are not dispositive). Even if the circuit court failed to properly advise Birk during the plea colloquy, it does not follow that he would necessarily be entitled to withdraw his plea. Instead, he would be entitled to an evidentiary hearing at which the State would be required to prove that Birk "in fact possessed the constitutionally required understanding and knowledge" that had been omitted from the colloquy. *See Bangert*, 131 Wis. 2d at 275. Here, the circuit court already held an evidentiary hearing, and it found that Birk was "fully informed of his constitutional rights" and that his asserted lack of understanding was "incredible." We have determined that these findings are not clearly erroneous; therefore, even if there were a defect in the colloquy, it would not be grounds for further relief.

### III. Birk Has Not Shown That His Plea Was Unknowing, Involuntary, or Unintelligent

¶29    Birk also argues that his guilty pleas were not knowing, voluntary, and intelligent. Whether a plea was entered knowingly, voluntarily, and

---

[7] Neither party cites *State v. Pegeese*, 2019 WI 60, ¶4, 387 Wis. 2d 119, 928 N.W.2d 590, a recent case in which our supreme court declined to exercise its superintending authority to "impose a specific requirement that … circuit courts must individually recite and address each constitutional right being waived and then otherwise verify the defendant's understanding of each constitutional right being waived."

intelligently is a question of constitutional fact.  *Taylor*, 347 Wis. 2d 30, ¶25.  We review it independently, while upholding the circuit court's findings of historical or evidentiary fact unless they are clearly erroneous.  *Id.*

¶30     Birk contends that his guilty pleas were unknowing and unintelligent because he was unaware of some of the specific constitutional rights he was giving up and the potential penalties for the crime.  He also contends that his pleas were involuntary because his trial counsel "overmastered" him into accepting the State's offer and because he was in a vulnerable state due to his mental health problems and the conditions of confinement.  To accept these arguments, we would have to credit Birk's testimony, which the circuit court found to be incredible, self-serving, and contradicted by the record.  As discussed above, the court found that Birk had been advised of the maximum penalty for each offense and was fully informed of his constitutional rights.  The court found that Birk's "decision to enter guilty pleas was based on [his] weighing of the advantages and disadvantages of proceeding to trial," and that trial counsel "did not promise [Birk] anything," nor did counsel "threaten" Birk "in order to force" him "to enter pleas."  As stated above, Birk has not shown that any of these findings are clearly erroneous.  Accordingly, Birk has not demonstrated that the court erred when it determined that his guilty pleas were knowing, voluntary, and intelligent and rejected Birk's motion for plea withdrawal on that basis.

### IV.  Birk Has Not Shown That His Trial Counsel Was Ineffective

¶31     Finally, Birk argues that he should be allowed to withdraw his plea because he received ineffective assistance of counsel.  A defendant alleging ineffective assistance of counsel must demonstrate that the attorney's performance was deficient and that the deficient performance was prejudicial.  *State v. Bentley*,

201 Wis. 2d 303, 311-12, 548 N.W.2d 50 (1996) (citing **Strickland v. Washington**, 466 U.S. 668, 687 (1984)). If the defendant fails to satisfy either requirement, the court need not consider the other. **State v. Breitzman**, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93.

¶32    Birk's primary argument on this issue is that his trial counsel provided inaccurate advice prior to the plea hearing, which induced him to plead guilty. Again, accepting this argument would require us to disregard the circuit court's findings of fact. Because Birk has not shown these findings to be clearly erroneous, we conclude that Birk has failed to demonstrate that his counsel provided inaccurate information when advising Birk prior to the plea hearing.

¶33    Birk may also be arguing that his counsel's performance was deficient following the plea hearing. He contends that counsel should have filed a written motion for plea withdrawal long before the scheduled sentencing hearing, and that if he had done so, the circuit court would have determined that Birk had presented a "fair and just reason" for withdrawing his pleas.

¶34    We need not consider whether trial counsel's performance was deficient in this respect because Birk cannot show that he was prejudiced by any deficiency. Even under the more lenient "fair and just reason" standard that applies to pre-sentencing motions for plea withdrawal, such motions should not be granted "simply on a lark," **United States v. Hyde**, 520 U.S. 670, 676-77 (1997), and must be based on something more than the desire to have a trial, **Bollig**, 232 Wis. 2d 561, ¶29.

¶35    Here, Birk was given two chances to meet this standard, and both times, the circuit court found that his reasons fell short of it. At the outset of the sentencing hearing, after listening to trial counsel's argument for plea withdrawal,

15

the court explained, "[t]here's got to be a fair and just reason. I haven't heard any fair and just reason." Birk had a second opportunity to develop the record and expand upon his reasons for withdrawing his pleas at the postconviction evidentiary hearing. Aside from the allegations of coercion and inaccurate advice that the circuit court expressly rejected, the only reasons found in the record that Birk presented for wanting to withdraw his pleas was that they had been "hurried" and his conversations with fellow inmates caused him to second-guess his decision. Again, the court determined that Birk had not presented a fair and just reason for withdrawing his plea. Whether a defendant meets that standard is left to the circuit court's sound discretion, *id.*, ¶14, and Birk does not persuade us that the court erroneously exercised its discretion.

## CONCLUSION

¶36 For all these reasons, we conclude that Birk has not demonstrated that the circuit court erred when it found that Birk did not establish a fair and just reason for withdrawing his plea before sentencing, or a manifest injustice after sentencing. Accordingly, we affirm.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

16