STATE of Wisconsin, Plaintiff-Respondent,

v.

Adrian L. WILLIAMS, Defendant-Appellant-Petitioner.

Supreme Court

*No. 99–0752–CR. Oral argument May 31, 2000.—Decided July 6, 2000.*

2000 WI 78

(Also reported in 613 N.W.2d 132.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Ellen Henak*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Jeffrey J. Kassel*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. JON P. WILCOX, J. This case arises on a petition for review of an unpublished decision of the court of appeals that affirmed the judgment and order of the Circuit Court for Milwaukee County, Robert C. Crawford, Judge. The defendant, Adrian Williams, asks this court to adopt a new rule of procedure, which would require that if a trial judge anticipates exceeding the state's sentence recommendation under a plea agreement, the trial judge must inform the defendant of that fact and allow the defendant to withdraw his or her plea.

¶ 2. We decline Williams' invitation to create a new rule and instead adhere to the well-established law of this state. In Wisconsin, a trial court is not

bound by the state's sentence recommendation under a plea agreement. Before entering a plea, the defendant is informed of and understands that the sentence recommendation he or she has bargained for is not binding on the court. Under this procedure, "failure to receive sentence concessions contemplated by a plea agreement is [not] a basis for withdrawing a guilty plea on the grounds of manifest injustice." *Melby v. State*, 70 Wis. 2d 368, 385, 234 N.W.2d 634 (1975) (citing *Young v. State*, 49 Wis. 2d 361, 367 182 N.W.2d 262 (1971)). Because no manifest injustice occurred, Williams is not entitled to withdraw his plea.

## I

¶ 3. On January 12, 1998, police arrested seventeen-year-old Williams at his residence pursuant to a probation violation arrest warrant. During the arrest, police took Williams to his bedroom so that he could get dressed. The police found individually wrapped cocaine in Williams' jacket in his bedroom. They also saw a gun in the room. As a result, Williams was charged with two misdemeanors. The first count, misdemeanor possession of a controlled substance, contrary to Wis. Stat. § 961.41(3g)(c)(1995–96),[1] was punishable by up to one year of imprisonment in the county jail.[2] The second count, possession of a dangerous weapon by a person under the age of 18, contrary to Wis. Stat.

---

[1] All subsequent references to the Wisconsin Statutes are to the 1995–96 volumes unless otherwise indicated.

[2] Section 961.41(3g)(c) provides, "[i]f a person possess [sic] or attempts to possess cocaine or cocaine base,. . .the person shall be fined not more than $5,000 and may be imprisoned for not more than one year in the county jail."

§ 948.60(2)(a), was punishable by a maximum of nine months of imprisonment.[3]

¶ 4. Williams made a motion to suppress the evidence against him, but his motion was denied.[4] Williams then entered into a plea agreement with the State. In exchange for Williams' plea of guilty to both charges, the State agreed to recommend a sentence of four months on the first count and three months on the second count, to be served consecutively.

¶ 5. On September 17, 1998, the circuit court conducted proceedings during which Williams pled guilty to both charges and was sentenced. During the proceeding, Williams completed a guilty plea questionnaire, acknowledging that he understood "that the Judge is not bound to follow any plea agreement or recommendation made by the District Attorney, my attorney, or any presentence report. I understand that the Judge is free to sentence me to the following minimum (if applicable) and maximum possible penalties in this case." The applicable maximum penalties were specifically stated on the form. Williams' attorney signed the acknowledgement at the bottom of the form indicating that he had explained the questionnaire to

---

[3] Section 948.60(2)(a) provides, "[a]ny person under 18 years of age who possesses or goes armed with a dangerous weapon is guilty of a Class A misdemeanor." The penalty for a Class A misdemeanor is a fine not to exceed $10,000 or imprisonment not to exceed 9 months or both. *See* Wis. Stat. § 939.51(3)(a). A technical amendment to § 939.51(3)(a) took effect on December 31, 1997, but did not change the applicable penalties. *See* 1997 Wis. Act 35, § 575.

[4] Williams challenged the constitutionality of the officers' entry into his residence and the subsequent search and seizure that produced the cocaine and the gun. The trial court denied Williams' motion, and Williams did not appeal from that ruling.

Williams and that Williams had acknowledged that he understood each item on the questionnaire.

¶ 6. In addition, in accordance with established procedures,[5] the trial court questioned Williams personally to determine whether his plea was knowing, voluntary, and intelligent. During this questioning Williams acknowledged that he understood that the court was not bound by the State's sentence recommendation and that the court had the duty to impose a fair and just sentence. Williams then pled guilty to each charge.

¶ 7. Next, the prosecutor summarized the facts underlying the charges, and the defendant acknowledged that the prosecutor's summary was fair and complete. Based on this summary of the relevant facts, the court determined that the prosecutor could prove the charges beyond a reasonable doubt at trial. The court further concluded that Williams had waived his right to a jury trial on the charges and had knowingly, voluntarily, and intelligently entered his guilty pleas. The court then adjudged Williams guilty of the charges.

¶ 8. The court proceeded to sentencing. Consistent with the plea agreement, the prosecutor recommended a four-month sentence on the first count and a three-month sentence on the second count, to be served consecutively. The prosecutor argued that this sentence would "send the message to the defendant

---

[5] See Wis. Stat. § 971.08 and Wis JI—Criminal SM–32 at 1–8, 12. Note that effective December 1, 1998, subsection (1)(d) was added to § 971.08. See 1997 Wis. Act 181, § 100. The new subsection requires that before the court may accept the defendant's plea, the court must ask the prosecutor whether he or she has consulted with the victim or victims of the defendant's crime. See Wis. Stats. §§ 971.08(1)(d) and 971.095(2) (1997–98).

that this kind of activity has to stop now." The defense responded by asking the court to impose the sentences recommended by the State, but to make the sentences concurrent rather than consecutive. After hearing these recommendations, the court spoke extensively with Mr. Williams about his conduct and punishment.

¶ 9. After hearing from the State, the defense, and the defendant himself, the court pronounced sentence:

> THE COURT: . . . . Mr. Williams, I conclude that the evidence is absolutely overwhelming that you were a 17-year-old crack dealer in December 1997 and January 1998. I conclude that your possession of a loaded pistol next to your stash of cocaine made you dangerous. Indeed you were dangerous to yourself and dangerous to anybody whom you might have been dealing crack to.
>
> I think that it's my responsibility to impose sentences which will take you off the street for a while and give you a chance to grow up and perhaps reexamine where you're headed. . . .

The court sentenced Williams to the maximum penalties on both counts—one year on the conviction for possession of cocaine and nine months on the conviction for possession of a dangerous weapon by a person under the age of 18. Thus, the trial court imposed a sentence of a total of 21 months, 14 months longer than the sentence recommended by the State.

¶ 10. Williams subsequently filed a post-conviction motion seeking to withdraw his guilty pleas. Williams argued that "the current procedure that allows a court to exceed a bargained-for state's sentencing recommendation without warning to the defendant and without providing an opportunity to withdraw his plea is fundamentally unfair."

¶ 11. The circuit court denied Williams' motion, explaining that under Wisconsin's plea agreement procedure, the defendant is specifically warned that the prosecutor's sentence recommendation is not binding on the court. This ensures that the defendant's plea is knowing, voluntary, and intelligent. Sentencing is then conducted separately from the plea, and the trial court is not bound by the prosecutor's recommendation but instead has the duty to pronounce a sentence that protects the public interest. Under this court's holdings in *Melby*, 70 Wis. 2d 368, and *State v. Betts*, 129 Wis. 2d 1, 383 N.W.2d 876 (1986), no manifest injustice occurs when the trial court exceeds the state's recommendation under this procedure.

¶ 12. Williams appealed. The court of appeals affirmed the decision of the circuit court, noting that it was unable to change the established law of this state. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997)(holding that the court of appeals lacks the authority to overrule, modify, or withdraw published opinions). This court accepted Williams' petition for review.

## II

¶ 13. The circuit court's decision whether to permit a defendant to withdraw a guilty plea is generally a matter of discretion.[6] *State v. Thomas*, 2000 WI 13, ¶ 13, 232 Wis. 2d 714, 605 N.W.2d 836 (citing *State ex*

---

[6] Although the decision whether to permit withdrawal of a plea is ordinarily a matter of discretion, "[w]hen a defendant establishes a denial of a relevant constitutional right, withdrawal of the plea is a matter of right. The trial court. . .has no discretion in the matter in such an instance." *State v. Bangert*, 131 Wis. 2d 246, 283, 389 N.W.2d 12 (1986). Williams has not

*rel. Warren v. Schwarz*, 219 Wis. 2d 615, 635, 579 N.W.2d 698 (1998)). The circuit court's decision will be sustained if it was made upon the facts of the record and in reliance on the appropriate and applicable law. *Schwarz*, 219 Wis. 2d at 635 (citing *State v. Bangert*, 131 Wis. 2d 246, 289, 389 N.W.2d 12 (1986)).

█

¶ 14. After sentencing, the circuit court may permit a defendant to withdraw his or her guilty plea if the defendant establishes by clear and convincing evidence that withdrawal of the plea is necessary to correct a " 'manifest injustice.' " *Thomas*, 232 Wis. 2d at 726 (citations omitted). This "manifest injustice" test was adopted in *State v. Reppin*, 35 Wis. 2d 377, 386, 151 N.W.2d 9 (1967), based on a tentative draft of standards for plea withdrawals that had been issued by the American Bar Association Project on Minimum Standards for Criminal Justice. *See Thomas*, 232 Wis. 2d at ¶ 17 (discussing *Reppin*, 35 Wis. 2d at 385–86).

¶ 15. Williams contends that "manifest injustice" exists because he pled guilty to the charges "based solely on the state's recommendation for an aggregate sentence of seven months," and the trial court deviated from the state's recommended sentence "[w]ithout explicitly warning" Williams. Williams believes that "[t]he procedure allowing imposition of this sentence was so fundamentally unfair that it created a manifest injustice." (Appellant-Petitioner's Brief at 4.) He asks us to hold that when a trial court anticipates that it will exceed the sentence recommendation in the plea agreement, the court must inform the defendant that the court probably will not follow the State's recommenda-

asserted that he is entitled to withdraw his plea because he was denied a relevant constitutional right.

tion and offer the defendant an opportunity to withdraw the plea.

¶ 16. Williams' proposal is contrary to the well-established law of this state. This court has consistently held that when a defendant enters a plea with full knowledge of the fact that the trial court was not bound by the state's recommendation in the plea agreement, the trial court's decision to exceed the state's recommendation does not result in any "manifest injustice" and does not justify withdrawal of the plea. *Melby*, 70 Wis. 2d at 385–86; *Young*, 49 Wis. 2d at 366–67. *See also In re the Amendment of Rules of Civil & Criminal Procedure: Sections 971.07 & 971.08, Stats.*, 128 Wis. 2d 422, 383 N.W.2d 496 (1986) and *Betts*, 129 Wis. 2d 1.

¶ 17. Williams acknowledges that the circuit court and court of appeals' decisions were consistent with the law. He asks us to change this law, in exercise of our superintending and administrative authority over all Wisconsin courts. *See* Wis. Const. art. VII, § 3(1).

¶ 18. This court has the authority to change the law governing plea procedures and impose new procedures governing the entry of pleas. *See Bangert*, 131 Wis. 2d at 267–72 (imposing mandatory procedures to be followed at the plea hearing as a function of this court's superintending and administrative authority).

¶ 19. In 1986 this court considered and rejected a proposal similar to Williams' request. *See In re the Amendment of Rules*, 128 Wis. 2d 422 (rejecting a proposal to amend the Rules of Civil and Criminal Procedure pursuant to this court's rule-making authority in Wis. Stat. § 751.12).[7] The Judicial Council

---

[7] *See also State v. Betts*, 129 Wis. 2d 1, 1–2, 383 N.W.2d 876 (1986) (dismissing a petition for review that advocated a similar

proposed changing the Rules of Civil and Criminal Procedure to require a trial court to either approve or reject the plea agreement between the defendant and the state in its entirety. *Id.* at 423. Under the Judicial Council's proposal, if the court approved the agreement, the sentence or term of probation imposed on the defendant could be "no less favorable" than the recommended disposition. *Id.* If the court rejected the agreement, it would have to inform the defendant of the specific terms that the court intended to impose that would exceed the recommended disposition. *Id.* The defendant would then have the opportunity to withdraw the plea. *Id.*

¶ 20. This court rejected the Judicial Council's proposal for two primary reasons. First, the court concluded that the proposal was not necessary to ensure that the defendant understands that the state's recommendation does not bind the court:

> Insofar as it may be intended to ensure that a criminal defendant not be misled into entering a plea of guilty or no contest to criminal charges, the proposed procedure is unnecessary, as this court has set forth on numerous occasions the procedure a trial court is to follow prior to accepting a plea.

*Id.* at 424. Second, the court rejected the proposal because it was "contrary to what we have consistently held to be the proper judicial role in considering pleas made pursuant to an agreement." *Id.* at 425.

¶ 21. These same considerations weigh against adopting the proposal Williams advocates.

---

proposal because, having declined to adopt the rule under the rule-making procedure in Wis. Stat. § 751.12, the court would also decline to adopt it in the exercise of its superintending authority under Wis. Const. art. VII, § 3).

¶ 22. To begin with, the procedure Williams advocates is not necessary to ensure that defendants have fair warning that a trial court may exceed the sentence recommended by the prosecutor pursuant to a plea agreement. A defendant's right to understand the consequences of his plea is protected by the constitution, because by entering a plea, the defendant waives several federal constitutional rights, including the right to a jury trial and the privilege against self-incrimination. *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). A trial judge therefore may not accept a plea "without an affirmative showing that it was intelligent and voluntary." *Boykin*, 395 U.S. at 242. *See also Bangert*, 131 Wis. 2d at 257–58 (discussing *Boykin* and *Brady*).

¶ 23. In Wisconsin, Wis. Stat. § 971.08 ensures that this constitutional standard will be met. It provides in part:

> **(1)** Before the court accepts a plea of guilty or no contest, it shall do all of the following:
>
> (a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge *and the potential punishment* if convicted.
>
> (b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

Wis. Stat. § 971.08(1)(a)–(b) (emphasis added). In addition, this court has made mandatory certain procedures designed to ensure that a defendant understands the nature of the charge against him or her and understands that he will be waiving particular constitutional rights by entering a guilty plea. *See Bangert*, 131 Wis. 2d at 266–72.

304

¶ 24. The trial court in Williams' case followed all of the proper procedures to ensure that Williams' plea was a knowing, voluntary, and intelligent waiver of his rights. The record demonstrates that Williams knew and understood that the prosecutor's recommendation was not binding on the court:

> THE COURT: Mr. Williams, do you under-stand that I don't have to follow the prosecutor's recommendation about what your punishment should be?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand, Mr. Williams, that when you're convicted through your guilty plea this afternoon, I have to impose punishments that are fair and just?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand that you might be punished with punishments as large as the maximum punishment of a $1,000 fine and—I'm sorry, a $5,000 fine and one year in the county jail for possessing cocaine?
> THE DEFENDANT: Yes, sir.
> THE COURT: Do you understand that on your conviction for possession of a dangerous weapon by a person under 18 years of age, you might be punished with a maximum punishment of a $10,000 fine plus nine months in the county jail?
> THE DEFENDANT: Yes, sir.

In addition to this personal, oral acknowledgment, Williams and his attorney completed the guilty plea questionnaire reiterating the same information. Thus, the record establishes that Williams was fully informed of the fact that the court was not bound by the State's recommendation but instead had the duty to impose a fair and just sentence. *See Young*, 49 Wis. 2d at 367 ("[T]he trial court. . .made it crystal clear that

the judge was not bound by and could not be controlled by any understanding had by the prosecutor and defendant.").

¶ 25. Williams argues that it is inadequate to issue these warnings on the plea questionnaire and in open court because "[a]ll disclaimers that the court is not bound are often viewed as ceremonial incantations." *People v. Killebrew*, 330 N.W.2d 834, 842 (Mich. 1982)(citations omitted). He argues that the rule he proposes would increase fairness, particularly when the defendant is an unsophisticated participant in the process or when the defendant's attorney does not have sufficient knowledge about a particular judge's sentencing practices. He contends that his rule is needed to ensure that defendants are not at a disadvantage in plea bargaining with more sophisticated or more knowledgeable prosecutors.

¶ 26. These same arguments could have been made in support of the 1986 proposal. However, as this court explained when rejecting the 1986 proposal, involving the trial court in the process of plea agreement negotiations is contrary to the proper judicial role. *In re the Amendment of Rules*, 128 Wis. 2d at 424–29. " 'Trial judges should be careful to abstain from injecting themselves into plea bargaining or influencing the making of a plea.' " *Id.* at 425–26 (quoting *Rahhal v. State*, 52 Wis. 2d 144, 150, 187 N.W.2d 800 (1971)). This has been the law of this state since *State v. Wolfe*, in which this court held that:

> A trial judge should not participate in plea bargaining. This is true because (1) the defendant can receive the impression from the trial judge's participation in the plea discussions that he would not receive a fair trial if he went to trial before the same judge; (2) if the judge takes part in the preplea dis-

cussions, he may destroy his objectivity when it comes to determining the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report, and (4) the defendant may feel that the risk of not going along with the disposition which is apparently desired by the judge is so great that he will be induced to plead guilty even if innocent.

The vice of judicial participation in the plea bargaining is that it destroys the voluntariness of the plea.

*State v. Wolfe*, 46 Wis. 2d 478, 487–88, 175 N.W.2d 216 (1970) (footnote omitted) (quoted in *In re the Amendment of Rules*, 128 Wis. 2d at 426). Requiring a trial judge to approve or disapprove of a particular sentence recommendation prior to sentencing would in effect cause the trial court to participate in plea bargaining and therefore would undermine the voluntariness of the plea.

¶ 27. Williams next argues that certain changes in the court system in Wisconsin since the time of the Judicial Council's proposal in 1986 necessitate a change in procedure. Williams first contends that a change in procedure is required because the criminal courts have jurisdiction over an increased number of juvenile offenders. Williams notes that in 1986, an "adult" was defined as a person "18 years of age or older" for purposes of criminal court jurisdiction. Wis. Stat. § 48.02(1)(1985–86). In contrast, under the current law a person 17 years of age or older is an "adult" for purposes of criminal investigation or prosecution. Wis. Stat. §§ 48.02(1d) and 938.02(1)(1997–98). Williams also points out that in 1986, juvenile court jurisdiction over a violation of state criminal law could

not be waived unless the defendant allegedly committed the law "on or after his or her 16th birthday." Wis. Stat. § 48.18(1)(1985–86). The current law, on the other hand, subjects juveniles as young as ten years old to the original jurisdiction of adult criminal courts for certain offenses such as homicides. *See* Wis. Stat. § 938.183 (1997–98).[8] Williams argues that the developmental traits of younger defendants will make them more likely to assume that the judge will follow the state's sentence recommendation under the plea agreement.

¶ 28. In addition, Williams contends that a change in procedure is required because of the increased number of circuit courts and judges in Wisconsin since 1986. He argues that the increase in judges makes it more difficult for defense attorneys to know whether a particular court is likely to adhere to a particular recommendation. He contends that this change has less impact on prosecutors, who work in one county and sometimes in one particular court.

¶ 29. These factors do not persuade us to change Wisconsin's plea procedures, at least not in the context of Williams' case. As already discussed, Wisconsin courts follow procedures designed to ensure that the particular defendant understands the nature of the charge, the penalties that can apply, and the consequences of entering the plea. The procedures are flexible and should be changed as required to achieve their purposes under the circumstances of the particular case.[9] Williams does not argue that due to changes

---

[8] *See also* 1999 Wis. Acts 32, § 358 and 9, § 3130d, amending Wis. Stat. § 938.183.

[9] *See State v. Bangert*, 131 Wis. 2d 246, 267–68, 389 N.W.2d 12 (1986) (explaining that the different methods of ensuring that the defendant understands the nature of the charges will

in the court system, he did not know or understand that the trial court would not be bound by the state's recommendation as to sentence. Nothing in the record in this criminal case persuades us to abandon our well-established procedures.

¶ 30. Williams also emphasizes the difference between the proposal he advocates and the proposal rejected in *In re the Amendment of Rules*.[10] The 1986 proposal would have required the court to give very specific information about what sort of plea agreement would be acceptable. The court would have been required to either accept all of the terms of the plea agreement, including the recommended sentence, or to explain which specific terms were objectionable and

be appropriate depending on the circumstances including "the level of education of the defendant and the complexity of the charge."). *See also* Wis JI—Criminal SM–32 Comment at 12 ("The inquiry suggested here is intended to illustrate a complete plea acceptance procedure. . . . It is expected that individual judges will use it only as a general guide, choosing those parts that seem helpful and modifying others as appropriate to local practice and the case at hand.").

[10] Williams also argues that his proposal is distinguishable from the proposal rejected in *Melby*, because the defendant in *Melby* advocated that a trial court must either accept each and every term of a plea agreement or must reject the entire agreement. *See Melby v. State*, 70 Wis. 2d 368, 384–85, 234 N.W.2d 634 (1975). Williams emphasizes that under the rule he advocates, the trial court would not remain free to follow or deviate from any specific term of the plea agreement, so long as the trial court first gives the defendant a general warning that the court is likely to deviate in some way from the agreement and then gives the defendant an opportunity to withdraw his plea if he desires. We do not find any distinction between the rule advocated by Williams and the rule advocated in *Melby* that would justify a different result.

inform the defendant of the terms that the judge planned to impose instead. *In re the Amendment of Rules*, 128 Wis. 2d at 427. Under Williams' proposal, the court would not have to give any such specific information. The court would merely inform the defendant that it "probably will not" adhere to the terms of the plea agreement. The court would not be required to tell the defendant which particular terms of the agreement were unacceptable or to state specifically what other terms would be acceptable.

¶ 31. We do not think that this difference between Williams' proposal and the 1986 proposal eliminates the problems inherent in involving the trial court in plea negotiations. Under Williams' proposal, the trial court would still be required to either accept or reject a particular sentence prior to sentencing. It seems possible and even likely that in some cases, the defendant would withdraw his or her plea, the parties would conduct further plea negotiations, and the court would then be asked to accept a new proposal. What should happen if the second proposal was also unacceptable to the court? Would the court again be obliged to give a general warning that the court would probably deviate from some term of the agreement? At oral argument, Williams stated that a single opportunity to have the plea agreement accepted or rejected would be better than the current procedure. However, even if only for a single round of negotiations, Williams' proposal necessarily involves the court in the bargaining that leads to the plea. Involving the court in plea negotiations is unwise, for all of the reasons already stated.

¶ 32. Finally, Williams argues that Wisconsin's plea procedure places us in a distinct minority. He urges us to adopt his proposal to "bring Wisconsin into line with the majority of jurisdictions." The State con-

tests Williams' count of the jurisdictions but acknowledges that a small majority of states have adopted the rule advocated by Williams.[11] However, the State points out that what took place in Williams' case would *not* justify withdrawal of the plea in a significant minority of states.[12]

¶ 33. Both parties provided the court with thorough surveys of the rules governing withdrawal of pleas in jurisdictions throughout the United States. The most significant disagreement between the parties is how to characterize the rule followed in the federal courts. We think it is clear that under the federal rule, the procedure followed in Williams' case would not justify withdrawal. Under the procedure followed in federal courts, when the defendant in federal court has bargained for a ."recommendation" rather than a particular disposition, the trial court's deviation from the recommendation does not give the defendant the right to withdraw his or her plea.[13] Thus, although many states do follow a rule like the one advocated by Wil-

---

[11] Williams' brief included a thorough survey of the rules governing withdrawal of guilty pleas in United States jurisdictions. In response, the State contested Williams' characterization of a few of these jurisdictions, but the State's own research was for the most part consistent with Williams'. For an exhaustive report on the issue, see Annotation, *Right to Withdraw Guilty Plea in State Criminal Proceeding Where Court Refuses to Grant Concession Contemplated by Plea Bargain*, 66 A.L.R.3d 902 (1975 and Supp. 1999).

[12] *See, e.g.*, cases collected at Annotation, *Right to Withdraw Guilty Plea in State Criminal Proceeding Where Court Refuses to Grant Concession Contemplated by Plea Bargain*, 66 A.L.R.3d 902 § 5d (1975 and Supp. 1999).

[13] *See* Fed. R. Crim. P. 11(e)(1)(B) and 11(e)(2). Rule 11(e)(2) provides in part, "[i]f the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if

liams, the federal courts and many states still hold that the procedure that was followed in Williams' case does not result in any "manifest injustice."

¶ 34. We adhere to the prior decisions of this court. So long as the defendant understands before entering his or her plea that the trial court will not be bound by the prosecutor's sentence recommendation in the plea agreement, the trial court's deviation from that recommendation does not result in "manifest injustice." We therefore affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 35. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. I agree with the defendant that a circuit court should give an accused an opportunity to withdraw a guilty plea when the circuit court intends to impose a sentence greater than that recommended by the state pursuant to a plea agreement. Thus, I express my agreement with those Wisconsin circuit courts that presently let an accused know when the circuit court considers the recommended sentence

the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea."

The federal rule also authorizes plea agreements for a particular disposition, which the court must either accept or reject. *See* Fed. R. Crim. P. 11(e)(1)(C). However, the court need not accept such agreements, and some federal courts have been reluctant to even consider them. *See* Shayna M. Sigman, *An Analysis of Rule 11 Plea Bargain Options*, 66 U. Chi. L. Rev. 1317, 1319 and n.9 (1999)(advocating increased use of the procedure authorized by Fed. R. Crim. P. 11(e)(1)(C) but discussing the fact that the procedure has been rejected by many courts).

unacceptable and affords the accused an opportunity to withdraw a guilty plea. *See* Wis JI—Criminal SM–32 at 18, n.11.

¶ 36. I join the mandate in this case, however, because I conclude that any such change in our current plea practice should be made by this court not in a case but rather through its rule-making procedure, Wis. Stat. § 751.12 (1997–98).

¶ 37. Under the current procedure endorsed by this court, an accused who pleads guilty must give up the valuable right to trial, while a prosecutor gives up very little because the circuit court makes the ultimate sentencing decision.[1] Although an accused is told that a prosecutor's sentencing recommendation is not binding on the circuit court, many lawyers and accuseds believe that the circuit courts will accept the recommendation. And, as best we can tell, most circuit courts do, most of the time.

¶ 38. In my view, fundamental fairness requires that an accused not be entrapped into a plea agreement. *State v. Thomas*, 294 A.2d 57, 61 (N.J. 1972). A full understanding of the consequences of a plea is impossible when accuseds plead guilty believing that they have negotiated a specific length of sentence only to find that they are bound by an act of self-conviction, while the circuit court is free to impose any sentence within the statutory range. *State v. Killebrew*, 330 N.W.2d 834, 843 (Mich. 1984). I agree with the Michigan supreme court, which analyzed the fairness issue as follows:

---

[1] The court of appeals recognized "the significant risk taken by a criminal defendant who gives up valuable constitutional rights by pleading guilty in exchange for a sentencing recommendation that may go completely unheeded." *State v. Williams*, No. 99–0752–CR, unpublished slip op. at 5 (1999).

Although the prosecutorial "recommendation" would seem to inform the defendant of the consequences of his plea—that the prosecutor is merely suggesting a sentence and that the judge is not bound to follow the recommendation—the truth is that most defendants rely on the prosecutor's ability to secure the sentence when offering a guilty plea. This is true even when the court specifically admonishes the defendant that it is not bound by the prosecutor's recommendation. All disclaimers that the court is not bound are often viewed as ceremonial incantations (citations omitted).

. . .

To most defendants, the distinction between a sentence agreement and a sentence recommendation is little more than a variation in nomenclature.[2]

¶ 39. As the majority opinion acknowledges at ¶ 32, the arguments that the defendant in the present case has set forth for plea withdrawal have convinced a majority of jurisdictions to require trial courts to warn an accused when the court is going to reject part of a plea agreement and to allow an accused to withdraw the guilty plea. Such a plea practice is consistent with the ALI Model Code of Pre-Arraignment Procedure §§ 350.5(4) and 350.6 (1975) and the ABA Standards for Criminal Justice Plea of Guilty § 3.3(e) (3d ed. 1999). However, these jurisdictions, the commentators and the defendant in the present case differ on the details of the plea withdrawal procedure.

¶ 40. This court rejected one variation of a plea withdrawal procedure in a 1986 rule proposal. *See In the Matter of the Amendment of Rules of Civil & Criminal Procedure: Sections 971.07 & 971.08, Stats.*, 128 Wis. 2d 422, 383 N.W.2d 496 (1986) (criticizing the

---

[2] *State v. Killebrew*, 330 N.W.2d 834, 842–43 (Mich. 1984).

proposal as requiring the circuit court to take an active part in the plea agreement process). Other proposals address the concerns this court expressed in 1986. The Michigan supreme court recognized the dangers of involving a trial court judge in the plea agreement process but nonetheless established a required practice akin to that requested by the defendant in the present case. *See People v. Killebrew*, 330 N.W.2d 834, 841 (Mich. 1982). I have not determined which of the various proposals I would favor.

¶ 41. In 1986 the Wisconsin Department of Justice advised the court that the department strongly favored the adoption of the proposed rule regarding withdrawal of guilty pleas to assure that "the plea agreement process is uniform [across the state], fair to all parties and deserving of public confidence."[3] For the reasons set forth by the Department of Justice, I conclude that this court should adopt a rule, either on its own motion or on a petition brought to the court and after a public hearing, to allow plea withdrawal when a circuit court will not accept a prosecutor's sentence recommendation pursuant to a plea agreement.

¶ 42. For the reasons set forth, I concur in the mandate but write separately.

¶ 43. I am authorized to state that Justice ANN WALSH BRADLEY joins this concurrence.

---

[3] *See In the Matter of the Amendment of Rules of Civil & Criminal Procedure: Sections 971.07 & 971.08, Stats.*, 128 Wis. 2d 422, 430, 383 N.W.2d 496 (1986) (Abrahamson, J., dissenting).