BRENNAN, J.
¶1 Angela L. Staten appeals from a judgment of conviction and an order denying her postconviction motion for sentencing relief. She seeks a new sentencing hearing. Staten and two codefendants-her sisters Sharon and Tawanda-were charged in connection with a tax fraud scheme carried out over a period of three years that cost the State of Wisconsin $ 234,390. Pursuant to a plea agreement, Staten pleaded guilty to one felony count of theft by false representation and four felony counts of identity theft, each with a felony repeater enhancer. Thirty-five additional felony counts were dismissed and read in. She was the first of the three codefendants sentenced. She seeks resentencing on two grounds: first, that her sentence was unduly harsh because it is longer than the sentences the trial court later imposed on her codefendants; and second, that the trial court erroneously exercised its discretion by failing to articulate a basis for imposing prison time rather than probation on counts four and five.
¶2 We conclude that Staten is not entitled to resentencing because she has not met her burden to show that the trial court "based its determination upon factors not proper in or irrelevant to sentencing, or was influenced by motives inconsistent with impartiality." See Jung v. State , 32 Wis. 2d 541, 548, 145 N.W.2d 684 (1966). As to her first claim, although the codefendants all participated in the same scheme, they were not similarly situated for sentencing purposes: Staten's codefendants had fewer prior convictions, fewer open cases, pled guilty to fewer counts, had fewer dismissed counts read in, and had only misdemeanor repeater enhancers rather than felony repeater enhancers. Staten has therefore not met her burden to show that the disparity made her sentence unduly harsh. As to her second claim of error, it is Staten's burden to show that in imposing prison terms rather than probation on two counts, the trial court "fail[ed] to state the relevant and material factors that influenced its decision, relie[d] on immaterial factors, or [gave] too much weight to one factor in the face of other contravening factors." See State v. Steele , 2001 WI App 160, ¶10, 246 Wis. 2d 744, 632 N.W.2d 112. The record shows that the trial court stated briefly but clearly "the relevant and material factors that influenced its decision," see id. , namely that probation on count four was not proper because the court did not think Staten would benefit from probation "because of the consecutive sentences as to the [extended supervision]," and probation on count five was not appropriate because "she's on [extended supervision]" and "she'll have a sufficient amount of [extended supervision] time." We therefore affirm.
BACKGROUND
¶3 Staten was among those charged in connection with a tax fraud scheme in which the codefendants obtained and used over a thousand names, social security numbers, and birthdates of individuals-including those of prison inmates and identity theft victims-and used them to file fraudulent income tax returns and state Homestead Credit claims for over a million dollars. The scheme netted about $ 200,000 in refunds that the State of Wisconsin paid out. The investigation was prompted in 2010 when Staten's boyfriend, who was in prison, told a correctional officer that Staten was filing false returns.
¶4 Staten was charged with forty felony fraud and identity theft counts, all with felony repeater enhancers. As noted above, she pleaded guilty to five counts, and the remaining counts were dismissed and read in.
¶5 At sentencing, the State recommended a sentence totaling ten years of initial confinement on the first three counts, followed by ten years of extended supervision. For each of the remaining two counts, the State recommended imposed and stayed sentences of two years of initial confinement and two years of extended supervision, with six years' probation.
¶6 The trial court prefaced its sentencing decision by noting Staten's twenty prior convictions, the fact that this was "the largest tax fraud scheme" the investigator had seen in over thirty years on the job, and the fact that Staten had taken responsibility by pleading guilty, and it stated what it was taking into consideration:
[Q]uite frankly, the aggravating factors are so enormous in this case that it calls out for and cries for a prison sentence in the state institution.
The [c]ourt takes into consideration ... any past record of criminal offenses, any history of undesirable behavior patterns, the memorandum that was supplied to the [c]ourt, those representations that have been made by the state and the defense.
Your culpability, your age, educational background, employment history.
....
I'm not sure how much remorse. I think the remorse was basically the fact that you got caught.
But you did cooperate. Certainly the rights of the public.
....
And that it's really to protect the community from yourself because of your ongoing criminal behavior. Certainly a punishment aspect because of the enormous sophisticated scheme that you and others participated in.
....
You've got significant aggravating factors of having a number of prior convictions. And apparently [there are] still a couple cases pending outside of Milwaukee[.]
....
... You even participated while you were incarcerated on home release[.]
....
... So ... you did it out in the community.
The point is that while you were incarcerated, you still committed the fraud. It's completely outrageous conduct.
¶7 The trial court then proceeded through the five counts of which Staten had been convicted. For counts one through three, it followed the State's sentencing recommendation, for a total of ten years' initial confinement and ten years of extended supervision.[1] For count four, rather than staying the bifurcated four-year sentence and imposing probation, it stated, "As to Count 4, I don't think you really need so much of a probation because of the consecutive sentences as to the [extended supervision]. The [c]ourt's going to impose four years consecutive; two years of confinement and two years of extended supervision."
¶8 When it reached count five, the court initially imposed three years of probation and stayed a bifurcated four-year sentence. It stated the conditions of probation and had a brief exchange with both parties as to Staten's eligibility for substance abuse programming before deciding that she would not be granted eligibility. The trial court then recapped the sentence and then continued to speak and ultimately decided not to stay the sentence it had imposed for count five:
So she'll be doing four, eight, ten, twelve years of [extended supervision], with an additional four years hanging over her head on consecutive probation.
While she'll be doing eight-twelve years in.
Counsel, you'll advise her of her postconviction relief.
She's remanded into the custody of the sheriff.
....
You know what? After thinking about it for a second-or since the sentencing has been going on, I don't think probation is really appropriate because she's on [extended supervision].
So on that last count, on Count 5, the [c]ourt's going to strike that last sentence because she'll have a sufficient amount of ES time.
So the [c]ourt's just going to make it four years; two years in, two years out.
The [c]ourt's not going to change the amount. The [c]ourt's not going to stay that. And that will run consecutive to anything else that she's serving. So there's no probation.
¶9 Staten's codefendants also entered guilty pleas. The codefendants were both sentenced after Staten, and each was sentenced to a total of ten years of initial confinement followed by ten years of extended supervision, which was consistent with the State's recommendation in those cases.
¶10 Staten moved for postconviction sentencing relief. She argued that the disparity between her sentence and the sentences of her codefendants rendered her sentence unduly harsh. She further argued that the trial court erroneously exercised its discretion when it imposed prison instead of a stayed sentence with probation on counts four and five-as the State had recommended-because the reason the trial court gave for declining to impose probation on those counts "is not a proper basis" for its decision.
¶11 The postconviction court denied Staten's motion. It gave the following reasons for concluding that the disparity did not make Staten's sentence unduly harsh. First, that Staten "was being sentenced for five counts, not three counts as her sisters were." Second, that Staten had "two bail jumpings, one theft, and two more counts of retail theft pending in Racine and Walworth counties; the other two sisters did not." Third, that Staten "had more exposure than her sisters on account of her repeater status - she was exposed to four more years per count, whereas her sisters were exposed to only two additional years per count." It further concluded, as to the rejection of probation in favor of prison time, that it "perceive[d] no erroneous exercise of sentencing discretion for the reasons set forth on the record." This appeal follows.
DISCUSSION
Standard of review and governing law.
¶12 Sentences are reviewed to determine whether there has been an erroneous exercise of discretion. See Ocanas v. State , 70 Wis. 2d 179, 183-84, 233 N.W.2d 457 (1975). "However, such questions will be treated in light of a strong policy against interference with the discretion of the trial court in passing sentence." Id. at 183. "[T]here is a presumption that the trial court acted reasonably and the complainant is required to show some unreasonable or unjustifiable basis of the record for the sentence complained of." Id. at 184. "The exercise of discretion contemplates a process of reasoning based on facts that are of record or that are reasonably derived by inference from the record, and a conclusion based on a logical rationale founded upon proper legal standards." Id. at 185.
¶13 Where a sentence is challenged on the basis of disparity between codefendants' sentences, "a finding that there has been a denial of equal protection must rest upon a conclusion that the disparity was arbitrary or based upon considerations not pertinent to proper sentencing discretion." Id. at 187. "In short, insofar as the length of sentence (within the statutory maximum) is left to the sound discretion of the trial judge, there can be no denial of equal protection of the law unless that discretion has been abused." Id.
Because the three codefendants were not similarly situated, Staten has not shown that the sentence disparity rendered her sentence unduly harsh.
¶14 Staten argues that the disparity between her sentence and those of her codefendants-she received four years more prison time and was denied eligibility for substance abuse programming-is arbitrary. Her arguments are premised on the fact that the State recommended the same sentence for all three codefendants, and the trial court departed from that recommendation only in her case. She argues that for purposes of sentencing, all three had "equal culpability" in the tax fraud scheme as reflected by the trial court's comments at the subsequent sentencings. She argues that the number of counts does not change that fact because she was charged with more counts in spite of the fact that there was more inculpatory evidence against her codefendants. She argues that the difference in her repeater status was a technical, not meaningful difference because her codefendants also had accumulated felonies but they did not occur in the five-year period prior to the commission of these offenses, as the repeater statute requires. See WIS. STAT. § 939.62(1)(b), (2). She argues that there is no meaningful difference in their criminal histories, as all had lengthy records, and that one codefendant also had an open case at the time of sentencing.
¶15 All of Staten's arguments center on the State's sentencing recommendations for the three cases and the implication that because the State appeared to view the three codefendants as similarly situated for sentencing purposes, the trial court's decision to the contrary is arbitrary. It is well established that the trial court is not bound by a plea agreement or by the State's sentence recommendations. State v. Williams , 2000 WI 78, ¶2, 236 Wis. 2d 293, 613 N.W.2d 132 ("In Wisconsin, a trial court is not bound by the [S]tate's sentence recommendation under a plea agreement.").
¶16 It is also well established that the fact that the State presents similar recommendations for codefendants does not in any way obligate the trial court to follow suit. Ocanas involved a sentencing challenge based on the disparity between sentences for two defendants who received two years and twenty years, respectively, for raping a victim at gunpoint. Id. , 70 Wis. 2d at 183. Ocanas argued that "the agent who prepared the presentence reports in both cases [his and his codefendant's] came to substantially similar conclusions as to the proper treatment to be accorded each brother." Id. at 188 (emphasis added). Ocanas's arguments were based on "the argument that the wide disparity in sentences is unjustifiable in light of the substantial similarity in the records of the two brothers." Id. at 186. The reviewing court did not find that this constituted error on the part of the sentencing court: "While the recommendation in a presentence report is a relevant factor in determining type and length of sentence, the sentencing judge is not bound by it." Id. at 188. Our supreme court reviewed the record and upheld the sentence because the trial court had articulated reasons for its decision that were supported by the record.
¶17 Ocanas governs here, and it requires only that we determine whether the record supports the reasons given by the trial court for the disparity in the sentences such that it is not arbitrary. The trial court cited, in its order denying the postconviction motion, the ways in which Staten differed from her codefendants in terms of number of convictions and read-ins, total sentencing exposure, criminal history, and number of open cases. All of these factors are supported in the record. Under the standard of review employed by Ocanas -which affirmed a court's discretion to impose a sentence eighteen years longer than that of a codefendant convicted of the same crime who had a substantially similar criminal history-there is no way to conclude that the four-year discrepancy in the sentences of Staten and her codefendants "was arbitrary or based upon considerations not pertinent to proper sentencing discretion." See id. at 187.
Staten has not shown that the trial court erroneously exercised its discretion when it imposed prison time rather than probation on Count 4 and Count 5.
¶18 Staten argues that the trial court's decision to deviate from the State's recommendations on counts four and five-imposed and stayed sentences with probation-was an erroneous exercise of its discretion because it was arbitrary, contradicted the "court's stated goal of not imposing excessive supervision time," and failed to acknowledge that it is required to impose probation unless doing so would be harmful to the public, would be contrary to treatment needs, or would "unduly depreciate the seriousness of the offense." See State v. Gallion , 2004 WI 42, ¶25, 270 Wis. 2d 535, 678 N.W.2d 197 (citation omitted).
¶19 As noted above, the State's recommendation is in no way binding on the trial court. The State's recommendation is merely one factor for the trial court to consider. The trial court ultimately declined to stay the sentences on the two counts because it decided that Staten had "enough" nonconfinement time in the global sentence and would not benefit from probation. Staten reads this comment narrowly to mean that the trial court simply did not want to add probation time and argues that if the trial court had wanted to limit the nonconfinement time, it could have done so in various ways, such as making the sentences concurrent rather than adding confinement time. In the context of the hearing, the trial court's comments about "enough" probation time are more reasonably read to mean (1) that the goals of a probationary sentence would already be accomplished with the amount of supervision included in Staten's global sentence and (2) that the right balance between initial confinement and supervision in this case required adding the two confinement sentences.
¶20 As to Staten's argument that the trial court failed to discuss, per Gallion , why it was not imposing probation on counts four and five, the record clearly refutes it. The trial court addressed that issue squarely at the beginning of the sentencing hearing, when it said, "This is certainly a prison case. To do otherwise would depreciate the seriousness of the offense." As the State notes, the trial court observed that Staten had performed poorly on probation in the past and had committed these crimes while incarcerated on home release. The trial court made all the necessary findings as to why probation was not appropriate in this case. We therefore discern no error in the trial court's exercise of its discretion in imposing bifurcated prison terms rather than stayed sentences and probation.
¶21 For those reasons, we affirm the judgment and the order denying postconviction relief.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

According to the trial court's decision and order denying the postconviction motion, the trial court "originally imposed four years of extended supervision [on counts one and two] but commuted it to three years" pursuant to Wis. Stat. § 973.01(2)(d)5. (2017-18).
All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.