OCANAS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 43 (1974). Submitted under sec. (Rule) 251.54 September 9, 1975.—Decided October 2, 1975.*
(Also reported in 233 N. W. 2d 457.)

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, and *Robert J. Paul,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

BEILFUSS, J. The defendant presents two issues:

(1) Is the twenty-year sentence excessive and an abuse of discretion?

(2) Is the failure to modify his sentence in view of a three-year sentence given to his brother for the same offense an abuse of discretion and a denial of equal protection of the law?

At the trial the defendant claimed he was not guilty of forceable rape; that the complainant voluntarily consented to the act of sexual intercourse for payment of $50 and that because she was not paid she went to the police with a false claim of rape to "get even with them."

The trial court completely rejected the story of the defendant as it had a right to do and accepted the testimony of the complainant.

The defendant does not challenge the sufficiency of the evidence in this review.[1]

A resumé of the facts as testified to by the victim is as follows:

The victim, an eighteen-year-old waitress, living with her sister in Kenosha, was walking home on the evening of June 27, 1973. When she was about one-half block from her home she passed a house with two men sitting on the porch. She did not know them. They were the defendant, Julio Ocanas, who was about twenty-three years old, and his younger brother, Paul, who was about eighteen years old. Both were of Mexican descent. The younger brother Paul left the porch, approached the victim and asked if he could walk with her. She replied, "No." The defendant then came from the porch, said in a tone she believed to be demanding or threatening, "You will please come into the house."

When she entered the house there were four men, not two, and two small children. The defendant, Julio, picked up one of the small children and asked the victim to come upstairs with him. She refused. Paul then went to another room, got two handguns, kept one himself and gave the other to Julio. One of the other men also had a gun that looked like a machine gun. Paul then told her she was going upstairs. The defendant Julio had his gun pointed two and one-half inches from her head at that time. She then went upstairs into a bedroom with all four men and a little child.

Julio told her to take her clothes off. She said, "No." Paul, who then had his gun pointed at her head, pointed at the floor and fired the gun and said to her, "I'm boss

---

[1] The defendant originally obtained a writ of error to review the judgment but has withdrawn it.

man and you do as I say." She agreed and they took her clothes off. Julio, Paul and the big man fondled her. Julio and Paul still had the guns in their hands. The defendant Julio told her they were going to have some fun in bed. She consented to have sexual intercourse. The big man was left in the room with her. He threatened her, telling her it would be easy to put a pillow between her head and the gun and nobody would hear anything. He talked obscenely with her but did not have sexual intercourse with her. Paul then came into the room with his gun and had sexual intercourse with her. Paul left and the defendant Julio came in. They talked about his wife and he told her, "She's buried in the basement and that's where you'll be if you're not careful." He then had sexual intercourse with her. He had his gun in his hand at all times.

After the act, and while the defendant was dressing, the victim partially dressed, ran to the window, kicked out the screen and dove head first to the ground from this second-story bedroom. She broke an arm in the fall. She had difficulty in getting up and someone grabbed her. She screamed and the person left; she ran down the alley screaming. A man helped her home and she was taken to the hospital.

The defendant argues that the twenty-year sentence, which is two thirds of the statutory maximum, is excessive. He contends that there are extenuating circumstances and that reasons given by the court for the sentence are inadequate.

This court has stated that it will review sentences to determine whether there has been an abuse of discretion. However, such questions will be treated in light of a strong policy against interference with the discretion of the trial court in passing sentence. *State v. Tuttle* (1963), 21 Wis. 2d 147, 124 N. W. 2d 9; *Voigt v. State* (1973), 61 Wis. 2d 17, 211 N. W. 2d 445. In reviewing

a sentence to determine whether or not discretion has been exercised or whether such discretion has been abused, there is a presumption that the trial court acted reasonably and the complainant is required to show some unreasonable or unjustifiable basis of the record for the sentence complained of. *Jung v. State* (1966), 32 Wis. 2d 541, 145 N. W. 2d 684.

The defendant contends that the victim was sophisticated and experienced in sexual matters and she was not as outraged as the facts might seem to indicate. He points to the "street" language she used in some of her testimony and the fact that she had made a claim of rape against a man in Nevada several months earlier and then refused to go through with the prosecution.

A presentence report indicated the defendant had a prior criminal record consisting of several misdemeanors and two felonies. The felonies were nonsupport and discharging a firearm into a vehicle containing two police officers. In the firearm offense, he was sentenced to fifteen months on probation. He was on probation on the firearm conviction at the time of this offense.

The trial judge concluded that the testimony of the victim was credible while that of the defendant was not. In sentencing defendant, he stated that he had reviewed the evidence and was aware of the defendant's lack of education and inability to get employment. The judge concluded his statement as follows:

"And I have also gone over your presentence report and your past record. And it was brought up by your counsel that you had not been incarcerated on that particular charge, that you were placed on probation. And maybe that was an error that hopefully would do you some good. It did not.

"Such conduct, a contemptible act which all segments of society abhor. In light of the seriousness of this offense, I think, demonstrates that rehabilitation would be best served in a rigidly controlled structured environment."

Defendant contends that this statement demonstrates that no individual discretion was exercised. The exercise of discretion contemplates a process of reasoning based on facts that are of record or that are reasonably derived by inference from the record, and a conclusion based on a logical rationale founded upon proper legal standards. *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512. The trial judge's statement clearly demonstrates that he engaged in this reasoning process. As required by *McCleary*, the judge stated specific reasons for his conclusion: The defendant's past record of offenses, prior probation which was ineffective, and the seriousness and contemptible nature of the offense.

The weight which is to be attributed to each factor is a determination which appears to be particularly within the wide discretion of the sentencing judge. There has been no showing, as required by *Jung, supra,* that the trial court based its determination upon factors not proper or irrelevant to sentencing or that it was influenced by motives inconsistent with impartiality.

The trial judge has discretion in determining the length of sentence within the permissible range set by statute. *Hanson v. State* (1970), 48 Wis. 2d 203, 179 N. W. 2d 909. An abuse of this discretion will be found only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances. *Mallon v. State* (1970), 49 Wis. 2d 185, 181 N. W. 2d 364; *Buckner v. State* (1972), 56 Wis. 2d 539, 202 N. W. 2d 406; *McCleary v. State, supra.*

Our own review of the record convinces us the "not more than twenty year sentence" was not excessive. This young woman was compelled, under what she could consider threats to take her life, to submit to sexual intercourse. She was confronted with four men, three of them

armed, and forced into exceedingly humiliating circumstances. The suggestion that she was a willing victim is shattered by the undisputed fact she plunged headfirst, half-dressed, from a second-story window to avoid any further abuse. This was not only a vicious forceable rape, but was accomplished by the callous use of firearms. The twenty-year sentence may be tempered with our liberal parole considerations but, in any event, it is not excessive.

In the interval between the finding of guilty and the sentence in the defendant's case, his younger brother Paul entered a plea of nolo contendere to the same charge before a different judge. Paul was found guilty and sentenced to three years, later reduced to two.

By motion after judgment, the defendant asked that the initial sentence of twenty years be modified. At the hearing on that motion, defendant presented to the court the transcript of sentencing and presentence report in Paul's case. That record is before this court on appeal.

The defendant contends that the trial court's refusal to modify the sentence constitutes an abuse of discretion and a denial of equal protection of the law. These contentions are based upon the argument that the wide disparity in sentences is unjustifiable in light of the substantial similarity in the records of the two brothers.

Similar arguments were first considered by this court in *Jung v. State, supra*. In that case it was held that while equality of treatment under the fourteenth amendment requires substantially the same sentence for substantially the same case histories, it does not preclude different sentences for persons convicted of the same crime based upon their individual culpability and need for rehabilitation. In several subsequent cases, this court has relied on *Jung* in holding that mere disparity in sentencing does not constitute a denial of equal protection of the law. *See: Nelson v. State* (1967), 35 Wis. 2d 797,

151 N. W. 2d 694; *Price v. State* (1967), 37 Wis. 2d 117, 154 N. W. 2d 222; *State v. Schilz* (1971), 50 Wis. 2d 395, 184 N. W. 2d 134; *Kelley v. State* (1972), 54 Wis. 2d 475, 195 N. W. 2d 457; *Armstrong v. State* (1972), 55 Wis. 2d 282, 198 N. W. 2d 357; *Byas v. State* (1972), 55 Wis. 2d 125, 197 N. W. 2d 757; *State v. Studler* (1973), 61 Wis. 2d 537, 213 N. W. 2d 24.

In all of these cases it has been made clear that a finding that there has been a denial of equal protection must rest upon a conclusion that the disparity was arbitrary or based upon considerations not pertinent to proper sentencing discretion. In short, insofar as the length of sentence (within the statutory maximum) is left to the sound discretion of the trial judge, there can be no denial of equal protection of the law unless that discretion has been abused.

In *McCleary v. State, supra,* this court stated that the exercise of discretion contemplates a process of reasoning based on facts that are of record or that are reasonably derived by inference from the record, and a conclusion based on a logical rationale founded upon proper legal standards. The court there indicated that an abuse of discretion might be found under the following circumstances: (1) Failure to state on the record the relevant and material factors which influenced the court's decision; (2) reliance upon factors which are totally irrelevant or immaterial to the type of decision to be made; and (3) too much weight given to one factor on the face of other contravening considerations.

The defendant contends that the court abused its discretion in refusing to modify the original sentence by giving insufficient attention to the fact that Paul, who is argued to have had a "substantially similar case history," was sentenced to two years for the same crime. By its very nature, the exercise of discretion dictates that different judges will have different opinions as to what

should be the proper sentence in a particular case. *McCleary v. State, supra.* As a result, a judge imposing a sentence in one case cannot be bound by the determination made by a judge in another case. Indeed, the fact that this court might have reacted differently under the facts and circumstances of a particular case is, itself, insufficient to warrant a determination that the trial court abused its discretion. In the matter of sentencing, we have expressed a strong policy against interference with the discretion of the trial court. *State v. Tuttle, supra; Voigt v. State, supra.*

The record shows that the trial judge did give consideration to the sentencing record and case history of Paul Ocanas. In denying the motion to modify, he pointed out that the sentencing judge in the Paul Ocanas case expressly stated that he was giving him a light sentence. He also reiterated that the case history of the defendant indicated prior felony convictions and an inclination toward violent behavior. He concluded that the sentence as originally set was justified by the abhorrent nature of the crime of which the defendant was convicted.

The defendant points to the fact that the agent who prepared the presentence reports in both cases came to substantially similar conclusions as to the proper treatment to be accorded each brother. While the recommendation in a presentence report is a relevant factor in determining type and length of sentence, the sentencing judge is not bound by it. *State v. Burgher* (1972), 53 Wis. 2d 452, 192 N. W. 2d 869. Defendant also contends that the record demonstrates that Paul Ocanas was the "boss man" while defendant's role in the crime was passive by comparison. This factor, also, is relevant in sentencing. *Lange v. State* (1972), 54 Wis. 2d 569, 196 N. W. 2d 680.

A reading of the defendant's trial transcript does reveal that the younger brother Paul did self-style himself "boss man." However, the record also reveals that when

the victim refused to come into the house, it was the defendant who ordered her to do so. Also, it was the defendant who first told her to go upstairs. It was also the defendant who told her his wife was buried in the basement and that she better be careful, and it was the defendant who was on probation after being convicted of firing a firearm into an automobile with two officers in it. We agree that these factors present a more aggravated offense on the part of the defendant.

Disparity alone does not amount to a denial of equal protection. The sentence imposed upon the defendant was based upon relevant factors with no improper considerations on the part of the trial court. The sentence was not excessive. "Undue leniency in one case does not transform a reasonable punishment in another case to a cruel one."[2]

*By the Court.*—Order affirmed.

---

[2] *Howard v. Fleming* (1903), 191 U. S. 126, 136, 24 Sup. Ct. 49, 48 L. Ed. 121.