State of Wisconsin, Plaintiff-Respondent,
v.
Michael B. Vernio, Defendant-Appellant.
No. 03-3354-CR.
Court of Appeals of Wisconsin.
Opinion Filed: July 7, 2004.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1. CANE, C.J.
Michael Vernio appeals a judgment of conviction for conspiracy to commit robbery and conspiracy to commit burglary. He also appeals the trial court's order denying his postconviction motion for sentencing modification or vacation. Vernio argues the trial court erroneously exercised its discretion in sentencing him. Specifically, he claims his sixteen-year imprisonment sentence is unduly harsh and premised on inaccurate information. He further contends the trial court erred by denying his postconviction motion seeking sentence modification without a hearing. We affirm the judgment and order.

Background
¶2. The State charged Vernio with one count each of first-degree intentional homicide, first-degree reckless homicide, conspiracy to commit robbery by use of force and conspiracy to commit burglary. The charges stemmed from events that occurred in late March 1997 through early April 1997. In late March, Vernio, Shannon Ristau, Scott Kujak, and Eric Corey met at Vernio's house in Winona, Minnesota, to discuss robbing an elderly man, Aloyzie Przybilla, who lived in Independence, Wisconsin. Ristau, Kujak and Corey testified that Vernio indicated they should break into Przybilla's house and rob him because Vernio heard Przybilla kept anywhere from $75,000 to $100,000 under his bed. Later, the four of them drove to Independence at night to find Przybilla's house. After they could not find the house, they returned to Vernio's house.
¶3. Ristau, Kujak and Corey all testified that Vernio said he shot Przybilla after he and Ristau found Przybilla's house in early April. Nevertheless, the jury acquitted Vernio of the two homicide charges, but convicted him on the two conspiracy counts. The trial court later sentenced Vernio to eight years' imprisonment on each conspiracy count, to be served consecutively.
¶4. In separate cases, pursuant to plea agreements, Ristau and Kujak pled guilty to conspiracy to commit theft of property greater than $2,500. In contrast to Vernio's sixteen-year prison sentence, Ristau was sentenced to five years' probation with six months' conditional jail time, and Kujak was sentenced to three years' probation. At the time this appeal was filed, the State had not charged Corey.
¶5. The trial court later denied Vernio's postconviction motion seeking to modify or vacate his sentence. Vernio appeals.

Discussion
¶6. We review sentences to ensure a trial court properly exercised its discretion. State v. Gallion, 2004 WI 42, ¶17, 678 N.W.2d 197. The primary factors the circuit court should consider at sentencing are the gravity of the offense, the character of the offender, and the need for protection of the public. State v. Smith, 207 Wis. 2d 258, 281-82 n.14, 558 N.W.2d 379 (1997). "[I]n any instance where the exercise of discretion has been demonstrated, [the appellate court] follows a consistent and strong policy against interference with the discretion of the trial court in passing sentence" because "the circuit court is best suited to consider the relevant factors and demeanor of the convicted defendant." Gallion, 2004 WI 42, ¶18.
¶7. The trial court expressly acknowledged it was sentencing Vernio on the conspiracy counts and not for homicide charges on which the jury acquitted Vernio. Nevertheless, as to the gravity of the offenses, the court noted a conspiracy for a "house invasion" is an extremely dangerous act and properly considered Przybilla's death as a consequence of the conspiracy.[1]See State v. Damaske, 212 Wis. 2d 169, 195, 567 N.W.2d 905 (Ct. App. 1997) ("[A] sentencing court may consider conduct for which the defendant has been acquitted."). Further, the court indicated the conspiracy's effect in causing Przybilla's death resulted in a "lifetime of harm" to Przybilla's adult children.
¶8. In considering Vernio's character, the court noted there was evidence that Vernio had emotional or mental disabilities, notwithstanding his assertions otherwise and his insistence that he did not need treatment. Further, the court noted Vernio had a history of violence. While he was only twenty-seven years old, he had ten prior convictions in Minnesota, which included a number of assaults. The trial court noted the presentence investigation (PSI) writer stated Vernio felt "no empathy or guilty feeling for the victims of any of his assaults." The court quoted the PSI writer as concluding "[Vernio] appears to have been criminally orientated at a young age. He appears to be more motivated by power and control, than cooperation and hard work." Also, the PSI writer concluded Vernio" was more apt to be a leader in the present offense." Additionally, the court was troubled by Vernio's failure to admit his culpability and attempts to minimize his connection to the conspiracy to the PSI writer.
¶9. Finally, considering the rural nature of Trempealeau County, the court noted the community suffered a significant loss of security and a heightened sense of vulnerability due to the conspiracy's unexpected and violent nature. Further, given the seriousness of the crimes and Vernio's violent past coupled with his lack of empathy, the court found he posed a danger to the community.
¶10. The court concluded probation would unduly depreciate Vernio's rehabilitative needs and inadequately protect the public. In this regard, the court noted that Vernio was on probation several other times in connection with his Minnesota convictions. The court also considered the seriousness of Vernio's participation in the conspiracy as the conspiracy's "main connection," and the gravity of the conspiracy's consequences. The court observed Vernio was relatively young, may be gaining some maturity, and may be able to turn his life around. Thus, it did not accept the State's recommendation for the maximum of two consecutive ten-year terms of imprisonment. However, the court did find Vernio's rehabilitative needs and the need for public protection required confinement. Consequently, the court sentenced Vernio to eight years' imprisonment on each count, to be served consecutively.

Unduly Harsh
¶11. Vernio argues the sentence is unduly harsh. We disagree. A sentence is deemed to be unduly harsh or unconscionable if it is "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." Ocanas v. State, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975). However, a sentence well within the limits of the maximum sentence is presumptively not unduly harsh. State v. Grindemann, 2002 WI App 106, ¶¶31-32, 255 Wis. 2d 632, 648 N.W.2d 507.
¶12. The circuit court could have sentenced Vernio to a maximum penalty of twenty years' imprisonment, yet it only sentenced him to sixteen years' imprisonment. The sentence is well within the maximum limits, and thus, it is presumptively not unduly harsh. See id.
¶13. Nonetheless, Vernio argues his sentence shocks public sentiment and is excessive when compared to the sentences of his co-conspirators, Kujak and Ristau. In exchange for their testimony at Vernio's trial, Ristau and Kujak entered into plea agreements with the State whereby they pled guilty to one count of conspiracy to commit theft in an amount exceeding $2,500, contrary to Wis. Stat. §§ 943.20(1)(a) and (3)(c) and 939.31(1) (1995-96). The maximum penalty for this offense was ten years' imprisonment or a $10,000 fine, or both. Wis. Stat. § 939.50(3)(c) (1995-96). The State agreed to ask to withhold sentence and place them on probation with conditions including any jail term to be determined by the court after a presentence investigation. The court sentenced Ristau to five years' probation, with six months' conditional jail time and other conditions that are not material here. The court later sentenced Kujak to three years' probation, consecutive to a prison sentence he was serving in Minnesota, with several conditions also not material here. As indicated, the other co-conspirator, Corey, was not charged at the time of this appeal.
¶14. While Vernio's co-conspirators' sentences vary dramatically from his, their sentences reflect leniency based upon the plea agreements they entered into with the State. However, as we noted in State v. Perez, 170 Wis. 2d 130, 144, 487 N.W.2d 630 (Ct. App. 1992), "leniency in one case does not transform a reasonable punishment in another case into a cruel one." Further, a trial court is not required to base a defendant's sentence on the sentences of co-defendants, since "[i]ndividualized sentencing is a cornerstone to Wisconsin's system of indeterminate sentencing." State v. Lechner, 217 Wis. 2d 392, 427, 576 N.W.2d 912 (1998). Thus, although Vernio clearly received the stiffest sentence of all the conspirators, Kujak's and Ristau's sentences are not the yardstick by which Vernio's sentence is to be measured for undue harshness.
¶15. Instead, our focus is whether the sentence is "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." See Ocanas, 70 Wis. 2d at 185. We conclude that not only has Vernio failed to overcome the presumption that his sentence was not unduly harsh, his sentence is not excessive and does not shock public sentiment.

Inaccurate Information
¶16. Vernio next argues the trial court sentenced him on inaccurate information. A defendant has a due process right to be sentenced on the basis of accurate information. State v. Coolidge, 173 Wis. 2d 783, 788, 496 N.W.2d 701 (Ct. App. 1993). Whether a defendant's right to due process was violated presents a question of law we review independently. Id. at 789.
¶17. To establish a due process violation in sentencing, a defendant must show both that inaccurate information was presented to the sentencing court, that the circuit court actually relied upon the inaccurate information in sentencing him, and that the defendant was prejudiced by the false information. State v. Johnson, 158 Wis. 2d 458, 468, 463 N.W.2d 352 (Ct. App. 1990); Coolidge, 173 Wis. 2d at 789.
¶18. Vernio takes issue with statements made by one of Przybilla's adult children, who at the sentencing hearing stated he heard Vernio told other prisoners at jail that he had gotten away with murder. However, our review of the record indicates the trial court did not rely on this information. Therefore, the sentence was not premised on inaccurate information.
¶19. Vernio also takes issue with the PSI. Vernio does not object to any specific sections the trial court relied on in imposing sentence and actually concedes the PSI "was not technically inaccurate." He argues, however, the PSI begins and ends with the assumption that he committed a homicide. Yet, the court repeatedly stated it was not sentencing Vernio for Przybilla's homicide but for his significant involvement in the conspiracy. Thus, even if the PSI generally presumes Vernio murdered Przybilla, Vernio has not established the court relied on that assumption.

Lack of Postconviction Hearing
¶20. Lastly, Vernio argues the trial court erred by denying his postconviction motion without a hearing. However, Vernio's complaint actually centers on the trial court's failure to fully articulate reasons why his motion for modifying or vacating his sentence was denied. The trial court's order denying Vernio's postconviction motion indicated "the records and files in this case conclusively show that the defendant is not entitled to the requested relief."
¶21. Vernio submits that "[t]here is no evidence that the court `applied the proper legal standards,' or that it applied any legal standards at all regarding the various legal arguments set out in the postconviction motions." Vernio's postconviction motion raised the same issues he argues on appeal. Because we have rejected all of Vernio's arguments, we conclude the trial court did not err by denying his postconviction motion without a hearing.
Judgment and order affirmed.
NOTES
[1] It is undisputed that the conspiracy caused Przybilla's death, even though the jury acquitted Vernio of the homicide charges. Even Vernio, in his appellate brief, casts blame for Przybilla's death on the other co-conspirators. Thus, regardless of who the shooter was, what remains is that the conspiracy caused Przybilla's death.