State of Wisconsin, Plaintiff-Respondent,
v.
John A. Nutt, Defendant-Appellant.
No. 04-1060-CR.
Court of Appeals of Wisconsin.
Opinion Filed: January 25, 2005.
Before Fine, Curley and Kessler, JJ.
¶ 1 FINE, J.
John A. Nutt appeals from a judgment entered after the trial court found him guilty of assault by a prisoner for expelling bodily fluids, see WIS. STAT . § 946.43(2m)(a), and from an order denying his postconviction motion. Nutt alleges that: (1) his trial lawyer was ineffective, and (2) the trial court erroneously exercised its sentencing discretion. We affirm.

I.
¶ 2 John A. Nutt was charged with one count of assault by a prisoner for spitting on Deputy Robert Ott while he and Deputy Brandon McAffee were taking Nutt to his cell at the Milwaukee County Jail. Nutt pled not guilty by reason of mental disease or defect. As a result, the trial court appointed Kenneth H. Smail, Ph.D., to conduct a competency evaluation. Dr. Smail tried to interview Nutt at the Milwaukee Secure Detention Facility, but Nutt would not come out of his cell. In a letter to the trial court, Dr. Smail indicated that Nutt's behavior at the Facility had been "quite problematic" because Nutt "had been spitting at others, smearing feces, [and] episodically refusing medication."
¶ 3 Nutt eventually agreed to talk to Dr. Smail. Smail reported that "there is not sufficient evidence to conclude that [Nutt] either lacked substantial capacity to appreciate his conduct or conform his conduct to the requirements of the law." Nutt then refused to meet with his lawyer or attend court hearings. The trial court ordered another competency evaluation. Nutt again refused to meet with Dr. Smail. In a letter to the trial court, Smail noted that Nutt was "loud, profane and emphatic about his refusal to speak to me," and recommended that Nutt be sent to the Mendota Mental Health Institute for an evaluation.
¶ 4 At Mendota, Nutt was evaluated by Michael L. Hammer, Ph.D.[1] Dr. Hammer opined, to a reasonable degree of professional certainty, that Nutt had the "substantial mental capacity to understand the proceedings and assist in his own defense." He further opined that,
while Mr. Nutt has an apparent history of suffering from symptoms of a psychotic disorder at times, he does not appear to be suffering from such at the present time. He also has a history of exaggerating and even feigning symptoms of some sort of mental disorder, often (if not always) as a method to obtain some desired end.
Based on Dr. Hammer's report, the trial court found Nutt competent. Nutt withdrew his plea of not guilty by reason of mental disease or defect, and went to trial before the court, having waived his right to be tried by a jury.
¶ 5 Before the trial began, Nutt filed a Demand for Discovery and Inspection requesting, among other things, that the State provide "[a]ny relevant written or recorded statements of a witness whom the district attorney intends to call at trial, including but not limited to: ... all police officers' reports." As material to this appeal, the State turned over a report written by Deputy John Schroeder, which summarized the f acts of the assault.
¶ 6 On the morning of Nutt's trial, the assistant district attorney told the trial court that he had just given Nutt's lawyer two supplemental reports, written by Ott and McAffee, respectively. The assistant district attorney told the trial court that the reports gave specific details of the assault, but did not, in his opinion, contain exculpatory information. Nutt's lawyer confirmed that he had received the reports that morning, and the trial court adjourned the trial for approximately two hours.
¶ 7 Ott and McAffee testified at Nutt's trial. They told the trial court that, on the day of the assault, they were supervising visits by lawyers at the Milwaukee County Jail. When they were taking Nutt back to his cell, he went limp and tried to lie down on the floor. They picked him up and put him in his cell. According to Ott and McAffee, Nutt then spit at Ott. Ott told the trial court that Nutt's saliva hit the right side of his face. As we have seen, the trial court found Nutt guilty. It sentenced him to one year and nine months of imprisonment, with an initial confinement of one year and three months, and six months of extended supervision.

II.

A. Ineffective Assistance.
¶ 8 In order to prove ineffective assistance of counsel, a defendant must show: (1) deficient performance, and (2) prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must point to specific acts or omissions of counsel that are "outside the wide range of professionally competent assistance." Id., 466 U.S. at 690. There is a "strong presumption that counsel acted reasonably within professional norms." State v. Johnson, 153 Wis. 2d 121, 127, 449 N.W.2d 845, 848 (1990).
¶ 9 To prove prejudice, a defendant must demonstrate that that counsel's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. Strickland, 466 U.S. at 687. In order to succeed, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 466 U.S. at 694.
¶ 10 Our standard for reviewing an ineffective-assistance-of-counsel claim involves mixed questions of law and fact. Johnson, 153 Wis. 2d at 127, 449 N.W.2d at 848. A trial court's findings of fact will not be disturbed unless they are clearly erroneous. Ibid. The legal conclusions, however, as to whether counsel's performance was deficient and prejudicial, present questions of law. Id., 153 Wis. 2d at 128, 449 N.W.2d at 848. Finally, we need not address both Strickland prongs if the defendant does not make a sufficient showing on either one. Id., 466 U.S. at 697.
¶ 11 Nutt claims that his trial lawyer was ineffective because he did not move to strike the parts of Ott and McAffee's testimony that were allegedly based on their written reports, arguing that the State did not disclose the reports to Nutt within what Nutt contends was "a reasonable time before trial." See WIS. STAT. § 971.23.[2] Nutt's claim fails on the prejudice prong. He does not point out what parts of Ott and McAffee's testimony were encompassed by their reports, or how whatever was in those reports would have made a difference at his trial if the reports had been given to his lawyer earlier than they were. See State v. Flynn, 190 Wis. 2d 31, 48, 527 N.W.2d 343, 349350 (Ct. App. 1994) (defendant claiming ineffective assistance of counsel because of something that the lawyer did not do, must show how it would have made a difference if the lawyer had done what the defendant claims the lawyer should have done).

B. Sentencing.
¶ 12 Nutt contends that the trial court erroneously exercised its discretion when it relied on what Nutt asserts was an improper sentencing factor. Specifically, Nutt argues that the trial court "penalized" him when it considered "as an aggravating factor ... the cost to the County of repeated assessments of [his] competency." We disagree.
¶ 13 We will not disturb a trial court's sentence unless that sentence reflects an erroneous exercise of discretion. McCleary v. State, 49 Wis. 2d 263, 277278, 182 N.W.2d 512, 519520 (1971). A sentencing court erroneously exercises its discretion if it relies on "clearly irrelevant or improper factors." Id., 49 Wis. 2d at 278, 182 N.W.2d at 520.
¶ 14 The three primary factors a sentencing court must consider are the gravity of the crime, the character of the defendant, and the need to protect the public. State v. Harris, 119 Wis. 2d 612, 623, 350 N.W.2d 633, 639 (1984). The court may also consider the following factors:
"(1) Past record of criminal offenses; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention."
Id., 119 Wis. 2d at 623624, 350 N.W.2d at 639 (quoted source omitted). The weight given to each of these factors is within the trial court's discretion. Ocanas v. State, 70 Wis. 2d 179, 185, 233 N.W.2d 457, 461 (1975).
¶ 15 The trial court here considered the appropriate factors. It considered the seriousness of the crime, describing the assault as "disgusting ... offensive [and] outrageous." It also considered Nutt's character, noting that the competency evaluations gave Nutt "two very serious diagnoses"schizophrenia and antisocial character disorder. The trial court further considered Nutt's history of committing crimes while on probation, and noted that his criminal behavior had "become more dangerous and disrespectful and antisocial." Finally, the trial court considered the need to protect the community. It commented on the cost of Nutt's "intentional[ly] ... obstructive" behavior during the case, including the cost of physically transporting Nutt from the jail to the courtroom, the cost of having extra deputies in the courtroom, and the cost of the "number of transports up to Mendota for evaluations." See Harris, 119 Wis. 2d at 623, 350 N.W.2d at 639 (trial court may consider undesirable behavior pattern). In light of Dr. Hammer's conclusion that Nutt was at times a malingerer, the trial court appropriately considered the extra costs resulting from what it could reasonably conclude was Nutt's malingering and unjustified lack of cooperation. The trial court acted well within the ambit of its sentencing discretion.
By the Court.  Judgment and order affirmed.
NOTES
[1] This was Nutt's second trip to Mendota. He was sent there in October of 2002 for a competency evaluation in another case. He was found competent.
[2] WISCONSIN STAT. § 971.23 provides, as relevant:

Discovery and inspection. (1) WHAT A DISTRICT ATTORNEY MUST DISCLOSE TO A DEFENDANT. Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the state:
....
(e) Any relevant written or recorded statements of a witness named on a list under par. (d) [list of witnesses the district attorney intends to call at trial].
....
(7m) SANCTIONS FOR FAILURE TO COMPLY. (a) The court shall exclude any witness not listed or evidence not presented for inspection or copying required by this section, unless good cause is shown for failure to comply. The court may in appropriate cases grant the opposing party a recess or a continuance.