COURT OF APPEALS
DECISION
DATED AND FILED

December 2, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP1428-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CF950

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

HAROLD L. WILCHER,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1　　PER CURIAM.　Harold L. Wilcher appeals from a judgment of conviction and an order denying his postconviction motion.　He contends that the circuit court erred in finding no evidence of race-based discrimination when the prosecutor struck two prospective African-American jurors in his case.　He further contends that his sentence was unduly harsh.　We reject Wilcher's arguments and affirm.

¶2　　In 2017, the State charged Wilcher with first-degree reckless homicide and delivery of heroin, both as a party to a crime.　Wilcher was accused of causing the death of Anthony B. Niccolai by delivering heroin laced with fentanyl, which Niccolai used and died of as a result.　According to the complaint, Niccolai asked his son-in-law Matthew Poyner to purchase some heroin for him.　Poyner made the purchase[1] from a woman named Valerie Brooks, who, in turn, obtained it from Wilcher.　While Poyner and Brooks entered plea agreements with the State, Wilcher pled not guilty and proceeded to trial.

¶3　　At trial, the prosecutor used peremptory challenges to strike two prospective African-American jurors:　Anthony Stephens and Reneesha Georgette Brown.　Defense counsel made a ***Batson***[2] challenge.　In response, the prosecutor explained that his decision to strike Stephens and Brown was based upon their criminal convictions.　He stated:

> [I]n this voir dire, there really weren't many responses to my questions that I found concerning except for one person I struck, so the rest I essentially did on their known criminal record, and Mr. Stephens—at least my information is he has—he was charged with or convicted—it looks like

---

[1]　According to Poyner, he did not intend to purchase heroin with fentanyl in it.

[2]　***Batson v. Kentucky***, 476 U.S. 79 (1986).

2

he was charged with physical abuse of a child, convicted of a couple counts of battery in 2000. I was noting his reaction—knowing that he had this history, I was noting his reaction when I asked if anybody had any contact with my office. He sort of started to raise his hand, then did not, which is not—I guess it is understandable given that he would not want to reveal his criminal background, but one, he has interaction with my office, and two, that he felt the need apparently to not be forthright about it was concerning, and also I did strike the only two jurors I know of that have criminal convictions, which brings me to Ms. Brown, who has, while not a Kenosha criminal record, my information and the name is at least somewhat unique, so I'm fairly confident in it—she has an eviction on her record. She has an OAR. She has an operating without insurance, cracked, damaged windshield, operating without proof of insurance. Most concerning is she has a relatively recent conviction for issuance of worthless checks, disorderly conduct, and operating a motor vehicle without proof of insurance, and there is also a 2012 case for fraud, used to defraud is what my information says is on her CCAP record. Given that, that gave me pause in having her be a juror. I was concerned either or both of them could potentially have—I would not say a vendetta but at least some bias against the State of Wisconsin, and Ms. Brown in particular had convictions for dishonesty, and I thought that she would make not a suitable juror and that she may be biased against the State, so for those reasons— the reason I struck those two was their records, and really there wasn't much else to go on with this jury except for Mr. Kipp, who I struck because of his responses.[3] Everyone else was fairly quiet, so I did strike three jurors for their criminal records, the other being Mr. Myers, who appeared to be Caucasian.

From this, the circuit court determined that the prosecutor had provided a race-neutral reason for the strikes. Accordingly, it rejected defense counsel's ***Batson*** challenge.

---

[3] Kipp had questioned whether a drug dealer should be held legally responsible for the death of a person who voluntarily ingested the lethal drug.

¶4    The State subsequently presented its case to the jury. This included testimony from Poyner and Brooks, who described the transaction and Wilcher's involvement in it. It also included testimony from a forensic pathologist, who noted the lethality of the drugs and attributed Niccolai's death to an "[a]cute mixed drug intoxication." Additionally, it included an audio recording of Wilcher explaining to police why he sold heroin with fentanyl in it:

> These fucking idiots, man, they wanna die. You know what I mean? If the dope ain't good enough to put their ass in a coma, they're not happy…. They're happy when they're face is in their lap and they're drooling. They're not happy if their dope don't make them go into a coma…. They want fuckin' fentanyl…. They want to get fuckin' demolished. Do you know what I mean? They want to be destroyed. And then when that happens, then they start crying.

¶5    Ultimately, the jury convicted Wilcher of both charges. On the count of first-degree reckless homicide, the circuit court sentenced Wilcher to eighteen years of initial confinement and eight years of extended supervision. On the count of delivery of heroin, the court withheld sentence and ordered a consecutive term of four years of probation.

¶6    After sentencing, Wilcher filed a postconviction motion seeking to modify his sentence. In it, he complained that his sentence was unduly harsh when compared with the sentences of Poyner and Brooks.[4] The circuit court disagreed and denied the motion, citing differences in the cases. The differences included Poyner's and Brooks' cooperation with the State and what the court

---

[4] Poyner pled guilty to second-degree reckless homicide as a party to a crime and was sentenced to six and one-half years of initial confinement and ten years of extended supervision. Brooks also pled guilty to second-degree reckless homicide as a party to a crime and was sentenced to four years of initial confinement and four years of extended supervision.

perceived as Wilcher's "cruel indifference to the lives of others combined with his willingness to traffic in deadly drugs." This appeal follows.

¶7 On appeal, Wilcher first contends that the circuit court erred in finding no evidence of race-based discrimination when the prosecutor struck two prospective African-American jurors in his case. It is a violation of a defendant's equal protection rights to use a peremptory challenge to remove a potential juror because of race. *See **Batson v. Kentucky***, 476 U.S. 79, 84 (1986).

¶8 To succeed on a **Batson** claim, a defendant first must make a prima facie case that the prosecutor's peremptory challenge was race-based. ***State v. Lopez***, 173 Wis. 2d 724, 728, 496 N.W.2d 617 (Ct. App. 1992). If that showing is made, the burden shifts to the prosecutor to state a race-neutral explanation. **Id.** The circuit court then must determine whether the defendant has proved purposeful discrimination. **Id.** We apply the clearly erroneous test to that finding. **Id.** at 729.

¶9 Here, in response to defense counsel's **Batson** challenge, the prosecutor explained that his decision to strike Stephens and Brown was based upon their criminal convictions—a criterion he employed to also remove a juror who appeared Caucasian. The prosecutor expressed concern that the prior convictions might result in some kind of bias against the State. *See **State v. Sanders***, 2019 WI App 52, ¶11, 388 Wis. 2d 502, 933 N.W.2d 670 ("Bias against law enforcement and/or the criminal justice system more generally is a legitimate and very understandable reason for the State, when given the opportunity, to strike a potential juror."). This was a clear, reasonably specific, and facially nondiscriminatory reason for removing the prospective jurors. Accordingly, we

cannot say that the circuit court clearly erred in finding that the prosecutor did not act with a racially discriminatory intent.

¶10    Wilcher next contends that his sentence was unduly harsh. Again, he bases this argument upon the more lenient sentences of his co-actors, Poyner and Brooks.

¶11    A defendant challenging a sentence as unduly harsh must show that the sentence was "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975). A sentence well within the statutory maximum is presumed not to be unduly harsh. *See State v. Grindemann*, 2002 WI App 106, ¶¶31-32, 255 Wis. 2d 632, 648 N.W.2d 507.

¶12    We are not persuaded that Wilcher's sentence was unduly harsh. As noted by the circuit court, there were differences in Wilcher's case and the cases of his co-actors. Again, Poyner and Brooks cooperated with the State and entered plea agreements; Wilcher did not. Moreover, Wilcher was the main provider of the drugs that killed Niccolai. He knew the risk of selling heroin laced with fentanyl, yet seemed unmoved by it, describing his clients as "fucking idiots" who "wanna die." In the end, the court's sentence was well within the statutory maximum[5] and presumed not to be unduly harsh. *Id.* Wilcher has failed to meet his burden of showing otherwise.

---

[5] The statutory maximum sentence for first-degree reckless homicide is twenty-five years of initial confinement and fifteen years of extended supervision. *See* WIS. STAT. §§ 940.02(2)(a) and 973.01(2). All references to the Wisconsin Statutes are to the 2017-18 version.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.